1999 SD 28

Craig R. HAYES, M.D., and Craig R. Hayes, M.D., P.C., Plaintiffs and Appellants,

v.

NORTHERN HILLS GENERAL HOSPITAL; Charles Schulz, Hospital CEO, Black Hills Medical Center, P.C., Canis Lupus Partnership; Northern Hills Medical Associates, Inc.; Ruth M. McLaughlin, M.D.; Ruth M. McLaughlin, M.D., P.C.; Randall P. Graff; M.D.; Individually and in his Capacity as Director of Northern Hills General Hospital; Randall P. Graff, M.D., P.C.; Thomas J. Groeger, M.D.; Individually and in his Capacity as Director of Northern Hills General Hospital; Thomas J. Groeger, M.D., P.C.; Reuben B. Trinidad, M.D., Individually and in his Capacity as Director of Northern Hills General Hospital; Reuben B. Trinidad, M.D., P.C.; and Scott K.Ross, M.D., Defendants and Appellees.

No. 20497.

Supreme Court of South Dakota.

Argued Jan. 14, 1999.

Decided March 10, 1999.

Rehearing Denied April 20, 1999.

Gregory A. Eiesland and Michael P. Reynolds of Quinn, Eiesland, Day & Barker Rapid City, and Michael Abourezk, Rapid City, for plaintiffs and appellants.

Jeffrey G. Hurd of Bangs, McCullen, Butler, Foye & Simmons Rapid City, for appellee Northern Hills General Hospital, Schulz, Graff, Groeger, Trinidad.

Edward C. Carpenter of Costello, Porter, Hill, Heisterkamp and Bushnell, Rapid City, for appellee, Black Hills Medical Center, Canis Lupis, Norther Hills Med. Associates, McLaughlin, Graff, Groeger, M.D., Ind. Trinidad, Ind. Ross.

GILBERTSON, Justice.

[¶ 1.] Doctor Hayes (Hayes) brought suit against medical center, hospital, his former fellow shareholders and partners and partnerships (collectively defendants) after his services for these entities were involuntarily terminated. Hayes alleged sixteen (16) different causes of action. The trial court bifurcated the legal and equitable claims. Hayes prevailed in the trial on the equitable claims. The defendants' then moved for summary judgment on the legal claims. The trial court granted the defendants' motion. Hayes appeals. We affirm in part and reverse in part.

## FACTS AND PROCEDURE

[¶ 2.] Hayes is a physician currently practicing in Spearfish, South Dakota. He is the sole shareholder and director of Craig R. Hayes, M.D., P.C. (Hayes, P.C.). Black Hills Medical Center (BHMC) is a closely held South Dakota corporation. BHMC operates a medical clinic in Deadwood, South Dakota. Hayes was a shareholder and director of BHMC from inception in 1981 until his termination in July 1992. Canis Lupus (Lupus) and Northern Hills Medical Associates (NHMA) are partnerships affiliated with BHMC. Northern Hills Medical Associates, Inc. (NHMAI) is a closely held corporation affiliated with BHMC. Lupus, NHMA and NHMAI are engaged in the business of purchasing and leasing medical equipment and holding the real and personal property associated with BHMC. Hayes was one of the originating members of these entities. Drs. Ruth M. McLaughlin, Randall P. Graff, Thomas J. Groeger and Reuben B. Trinidad are shareholders, directors and partners of BHMC, Lupus, NHMA and NHMAI.

[¶ 3.] BHMC was formed in the early 1980's when Homestake Mining Company (Homestake) offered a group of doctors the opportunity to provide health care services to its employees, dependents of employees and retirees. BHMC was to provide these services at a capped cost.

[¶ 4.] Hayes, P.C. had a contract with BHMC to provide medical services. Under the contract, his services could be terminated without cause. Termination required an unanimous vote of the shareholders. Hayes had also entered into a Buy–Sell Agreement which provided that upon termination of his employment with BHMC, his ownership of stock and his control in BHMC, Lupus, NHMA and NHMAI would also terminate.

[¶ 5.] In June 1992, the shareholders along with BHMC's legal counsel held a clandestine meeting purposely excluding Hayes. The reason for the meeting was to find a means to remove Hayes from BHMC and its affiliates. Subsequently, the shareholders and BHMC called a meeting for July 2, 1992, including Hayes. The shareholders then confronted Hayes, voted to terminate the contract between BHMC and Hayes, P.C. and removed him from the ownership and management of BHMC and affiliated entities.

[¶ 6.] After his termination, Hayes attempted to continue his medical practice in Deadwood. He made arrangements with Northern Hills General Hospital (NHGH) to lease a portion of its facilities. Sixteen days after agreeing to the lease, NHGH decided not to lease the space to Hayes.

[¶ 7.] Hayes alleges that his termination from BHMC was accomplished without the contractually required sixty-day notice, without cause, without approval of the entire board of directors and in violation of the

contract. He also alleges that all the named defendants acted to ensure that he would not be able to reestablish a medical practice in Deadwood.[1] Hayes eventually abandoned the practice of medicine in Deadwood and now practices in Spearfish.

[¶ 8.] On April 26, 1993, Hayes filed suit against Homestake alleging claims of intentional interference with the business relationships and contracts that existed between Hayes and BHMC. Hayes claimed damages to be a loss of earnings or profits, deprivation of the value of his ownership interest in BHMC and deprivation of the value of his equity. Homestake was involved in and apparently supported Hayes' termination from BHMC. Hayes was awarded $200,000.00 plus costs. Homestake paid the full amount of the judgment.

[¶ 9.] Hayes filed suit on August 4, 1993, against the defendants.[2] Over Hayes' objection, the trial court bifurcated the legal and equitable claims and held a trial on the equitable issues on September 9, 1996. The court found Hayes and Hayes, P.C. were entitled to judgment in the amount of $102,-765.95 for their interest in BHMC and its affiliated entities, but dismissed all other equitable claims.

[¶ 10.] The defendants then moved for summary judgment on Hayes' legal claims. The trial court entered summary judgment for the defendants. Hayes and Hayes, P.C. appeal raising the following issue:

### [¶ 11.] Whether the trial court erred in granting the defendants' motion for summary judgment.

### STANDARD OF REVIEW

[¶ 12.] Our standard of review of a trial court's grant of a motion for summary judgment is well-settled. As we recently stated in *Estate of Shuck v. Perkins County:*

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." SDCL 15-6-56(c). We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. *Bego v. Gordon,* 407 N.W.2d 801, 804 (S.D.1987). All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. *Morgan v. Baldwin,* 450 N.W.2d 783, 785 (S.D.1990). The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. *Wilson v. Great N. Ry. Co.,* 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968).

1998 SD 32, ¶ 6, 577 N.W.2d 584, 586 (1998) (citations omitted).

### ANALYSIS AND DECISION

### [¶ 13.] Whether the trial court erred in granting the defendants' motion for summary judgment.

[¶ 14.] Hayes claims the following counts were inappropriately dismissed by the trial court through summary judgment: 1) tortious interference with a business relationship or expectancy; 2) intentional infliction of emotional distress; 3) breach of fiduciary duty; and 4) breach of contract.[3] We will discuss each claim below.

### [¶ 15.] *a. Tortious interference with business relationships*

### [¶ 16.] *i. Recognizing the tort*

[¶ 17.] This Court recognized tortious interference with business relationships or expectancies in *Tibke v. McDougall,* 479

---

1. Hayes alleges that the defendants interfered with the transfer of patient records, patient calls, Hayes' mail and the transfer of other information necessary for treating his patients. He also alleges they interfered with his attempt to rent the facilities at NHGH.

2. The following are the named defendants in this suit: NHGH and Charles Schulz, CEO; BHMC; Lupus; NHMA; NHMAI; Ruth M. McLaughlin, M.D.; Ruth M. McLaughlin, M.D., P.C.; Randall P. Graff, M.D. individually and in his capacity as director of NHGH; Randall P. Graff, M.D., P.C.; Thomas J. Groeger, M.D., P.C.; Reuben B. Trinidad, M.D., Individually and in his capacity as director of NHGH; Reuben B. Trinidad, M.D., P.C.; and Scott K. Ross, M.D.

3. The count for wrongful termination will be included under breach of contract.

N.W.2d 898 (S.D.1992).[4] *Landstrom v. Shaver*, 1997 SD 25, ¶ 73, 561 N.W.2d 1, 16. *See also Communication Tech. Sys., Inc. v. Densmore*, 1998 SD 87, 583 N.W.2d 125. "This cause of action is the recognition that valid business relationships and expectancies are entitled to protection from unjustified interference." *Landstrom*, 1997 SD 25 at ¶ 81, 561 N.W.2d at 18. The tort also protects a party's interest in stable economic relationships. *Maltz v. Union Carbide Chemicals & Plastics Co., Inc.*, 992 F.Supp. 286, 312 (S.D.N.Y.1998). "For this tort to occur, the business relationship, if in existence, need not be cemented by written or verbal contract and, whether or not it is in existence, it need not be intended that there be a contract." 45 AmJur2d *Interference* § 50 (1969).

[¶ 18.] Our case law establishes the elements for the cause of action to be:

1) the existence of a valid business relationship or expectancy;

2) knowledge by the interferer of the relationship or expectancy;

3) an intentional and unjustified act of interference on the part of the interferer;

4) proof that the interference cause the harm sustained; and

5) damage to the party whose relationship or expectancy was disrupted.

*Case v. Murdock*, 1999 SD 22, ¶ 12, 589 N.W.2d 917, 919. *Densmore*, 1998 SD 87 at ¶ 24, 583 N.W.2d at 131. *See also Tom Olesker's Exciting World of Fashion, Inc., v. Dun & Bradstreet, Inc.*, 16 Ill.App.3d 709, 713, 306 N.E.2d 549, 553 (1973) *rev'd on other grounds, Tom Olesker's Exciting World of Fashion, Inc., v. Dun & Bradstreet, Inc.*, 61 Ill.2d 129, 334 N.E.2d 160 (1975). The trial court dismissed Hayes' interference with business expectancy count by summary judgment. The court found Hayes could not meet the first element for the cause of action as he presented no material fact showing the existence of a business relationship with a third party. The trial court found that the prospective loss of patients was entirely too speculative as Hayes was depending on unknown and unidentified patients.

[¶ 19.] Hayes claims that summary judgment on this count was improper because the court confused the torts of tortious interference with contract and tortious interference with business expectancy. He claims only the tort of interference with contract requires the existence of a contract or relationship with a third party, while the tort of interference with a business expectancy does not. He also alleges the trial court misinterpreted *Landstrom* to mean the plaintiff must provide the identity of all persons who decided not to see Hayes because of the defendants' actions. Hayes claims there only needs to be an *"identifiable"* class, not *"identified"* parties. Finally, Hayes argues that a ruling for the defendants would render this tort a nullity because when a party claimed damage to a business expectancy, he would have to call and depose every person who conceivably could have been a customer to compile a list of "identified" persons.

[¶ 20.] We disagree with the trial court's interpretation of *Landstrom* and "identifiable party" because that approach to the tort will render it a nullity. Based on our reasoning below, we reverse and remand as we find a genuine issue of material fact as to this issue.

[¶ 21.] *ii. "Identifiable" third party*

[¶ 22.] "One is liable for commission of this tort who interferes with business relations of another, both existing and prospective, by inducing a third person not to enter into or continue a business relation with another or by preventing a third person from continuing a business relation with another." *Northern Plumbing & Heating, Inc., v. Henderson Bros., Inc.*, 83 Mich.App. 84, 268 N.W.2d 296, 299 (1978). We held in *Landstrom* that to meet the first element there must be a "valid business relationship or expectancy" with a third party. 1997 SD 25 at ¶ 75, 561 N.W.2d at 16. "[T]here must be a 'triangle'—a plaintiff, an *identifiable* third party who wished to deal with the plaintiff, and the defendant who interfered with the plaintiff and the third party." *Id.* (Emphasis

---

4. This tort has a variety of titles. For the sake of brevity and consistency we will address it as "interference with business expectancy," unless we are referring to a case from another jurisdiction that titles the tort differently.

added). The principal issue is what is meant by "identifiable" and whether Hayes provided enough evidence of "identifiable" third parties, to present a genuine issue of material fact that would allow him to take this tort claim before a jury. We have not previously addressed this element of the cause of action in detail. However, we find persuasive authority in other jurisdictions.

[¶ 23.] The case of *Crinkley v. Dow Jones and Co.*, arose when Dow Jones published an article in the *Wall Street Journal* claiming Crinkley and another had made payments to foreign governments to win their business. 67 Ill.App.3d 869, 872, 385 N.E.2d 714, 716, 24 Ill.Dec. 573, 575 (1978). Crinkley sued Dow Jones raising a number of counts. *Id.* One count was interference with prospective economic advantage.[5] *Id. at* 873, 385 N.E.2d at 717, 24 Ill.Dec. at 576.

[¶ 24.] Dow Jones moved to dismiss the count alleging interference with prospective economic advantage because Crinkley had failed to allege the exact identities of the third parties with whom his economic expectations had been destroyed. *Id.* Crinkley's cause of action for interference with prospective economic advantage was dismissed. *Id.*

[¶ 25.] On appeal, the Illinois appellate court looked to the arguments the defendants had advanced to challenge the sufficiency of this count. *Id.* at 878, 385 N.E.2d at 720–21, 24 Ill.Dec. at 579–80. First, Dow Jones argued that Crinkley failed to allege an interference with a prospective business relation either with specific third parties or with an identifiable class of third persons. *Id.* The court of appeals disagreed with the Dow Jones' argument.

[¶ 26.] The court found no authority that set forth the requirement that a plaintiff who alleges this cause of action must further allege the identity of the third party or parties by name. *Id.* at 878–9, 385 N.E.2d at 720–21, 24 Ill.Dec. at 579–80. *See Exciting World of Fashion*, 16 Ill.App.3d at 713, 306 N.E.2d at 553; *City of Rock Falls v. Chicago Title & Trust Co.*, 13 Ill.App.3d 359, 300 N.E.2d 331, 333 (1973). Further, the court also noted that in other cases involving this tort, the courts have not objected to the failure to name the prospective third parties. *Crinkley*, 67 Ill.App.3d at 878, 385 N.E.2d at 721, 24 Ill.Dec. at 580. *See Colucci v. Chicago Crime Commission*, 31 Ill.App.3d 802, 334 N.E.2d 461 (1975). Moreover, the court noted that the term is "identifiable" rather than "identified" third parties, "which ... indicates that the third party's specific identity *or* name is to be revealed at a subsequent time, such as at trial." *Crinkley*, 67 Ill. App.3d at 879–80, 385 N.E.2d at 721, 24 Ill.Dec. at 580. (Emphasis added). *See Willis v. Santa Ana Community Hosp. Ass'n*, 58 Cal.2d 806, 26 Cal.Rptr. 640, 376 P.2d 568 (1962). (The California Supreme Court allowed the plaintiff to proceed with an action for interference with a doctor's relationship with his prospective patients, who were not named).

[¶ 27.] The trial court misinterpreted the term "identifiable" as found in *Landstrom* to mean there always must be a specific, *named* third party. In *Landstrom*, the plaintiff claimed the defendants interfered with her prospective economic advantage because she could not sell her stock. 1997 SD 25 at ¶ 78, 561 N.W.2d at 17. However, Landstrom failed to show a valid business relationship or expectancy as she did not even try to sell her stock. *Id.* Landstrom even conceded that there was *"no identifiable third party with whom to sell her stock."* *Id.* (Emphasis added). In *Landstrom* we did not set the threshold for this tort at the level the trial court required of Hayes. The third party must only be "identifiable." Identifiable is defined in the sense that the third party is "subject to identification" or "capable of being identified." Webster's Third New International Dictionary 1123 (1971).

[¶ 28.] Hayes' claim is in sharp contrast to Landstrom's as he actively attempted to maintain and expand his business in the Lead–Deadwood area. He alleged specific facts that create a genuine issue of material fact of whether defendants interfered with the relationship with his patients and potential patients. The defendants' " 'interference' must be directed towards a specific ... class of third parties with whom the plaintiff ex-

5. *Supra* note 4.

pects to do business." *In re Haas*, 36 B.R. 683, 691 (N.D.Ill. 1984) (citation omitted). Hayes' specific class of third parties with whom the defendants' allegedly interfered is "persons seeking medical care in the Lead–Deadwood medical community from family practitioners from 1992 to the present." Hayes has presented an "identifiable" third party, which precludes summary judgment.

[¶ 29.] If we were to require that prospective third parties be identified by name we would render the tort for the most part, a nullity and, in all actuality, never allow a plaintiff to proceed with its claim beyond summary judgment especially if the business enterprise is dependent upon a large pool of clientele. The parties must only be identifiable—not identified as to provide an individual name for each. *Crinkley*, 67 Ill.App.3d at 879–80, 385 N.E.2d at 721, 24 Ill.Dec. at 580. If the parties or class are "identifiable" then the plaintiff has met his burden on that element. The standard of proof for "identifiable" parties at the subsequent trial stage is using these identifiable parties or class to create a nexus between those third parties and the defendants' acts. This nexus must be that it is "reasonably probable that ... prospective economic advantage would have been realized but for the [defendants' conduct]." *Westside Center Associates v. Safeway Stores 23, Inc.*, 42 Cal. App.4th 507, 49 Cal.Rptr.2d 793, 803 (1996) (citation omitted). *See also Haas*, 36 B.R. at 691. Such a "nexus" depends upon the totality of the circumstances.

[¶ 30.] Nonexclusive criteria which may be appropriate for consideration are: (1) whether the business or economic enterprise is established, (2) its prior history of profits, economic growth and potential for future growth, (3) the trade areas prior history of economic growth and potential for future growth, (4) location, weather and other seasonal factors, if applicable, and (5) the status of existing and potential competitors.[6] The "expectancies" this tort protects in the case of Hayes is the prospect or opportunity of repeat and additional patients. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 130 at 1006 (5thed 1984). Hayes may not know who his prospective individual patients might be, as it is just that, prospective, but he can identify the class. There is a "background of business experience on the basis of which it is possible to estimate with some fair amount of success both the value of what has been lost and the likelihood that the plaintiff would have received it if the defendant had not interfered." *Id.* A new or planned business will not be able to maintain this cause of action as it will have nothing to base its damages. However, there is a background upon which to base Hayes damages as he has been practicing with BHMC since 1981.

[¶ 31.] At trial, the plaintiff will be required to develop further evidence as to the third parties, as the plaintiff must show the defendants' knowledge of plaintiff's relationship with third parties, the defendants' act, proof of harm and damages and that the defendants' act was wrong. *See Monette v. AM–7–7 Baking Co. Ltd.*, 929 F.2d 276, 281 (6thCir.1991). ("If defendants conduct interfered with the plaintiff's business expectancy and if that interference was improper or unjustified, such evidence alone is enough to establish a prima facie case for intentional interference.").

[¶ 32.] For summary judgment analysis, we believe that Hayes' description of the third parties as "persons seeking medical care in the Lead–Deadwood medical community from family practitioners from 1992 to the

---

6. Examination of the appropriate criteria in this factually driven cause of action is appropriately left to the jury. For example, in *Landstrom* only one customer was needed to purchase Landstrom's minority interest in the jewelry company although the purchase price would be several million dollars. The pool of potential purchasers is obviously small and should be readily identifiable. On the other hand, a gas station or fast food enterprise located upon a major interstate highway is greatly dependent on a steady stream of customers who are traveling by and need the products offered for sale. The pool of potential customers to support a volume type business like these are large and many are unknown until they arrive as they are one-time customers. As such, the foundation of this cause of action is dependent on the plaintiff's factual situation. *See Trapp v. Madera Pacific, Inc.*, 390 N.W.2d 558, 562 (S.D.1986). ("[S]ummary judgment is appropriate to dispose of legal, not factual questions.").

present" is sufficiently specific so that the parties may be termed "identifiable" under *Landstrom* when connecting this claim to his already established practice in that same geographical area. 1997 SD 25 at ¶ 75, 561 N.W.2d at 16. As such, Hayes' claim survives summary judgment. We reverse and remand to the trial court.

### [¶ 33.] b. Intentional Infliction of emotional distress

[¶ 34.] The trial court granted the defendants' motion for summary judgment on the count alleging intentional infliction of emotional distress. The court found Hayes failed to provide the material facts to meet two elements of the cause of action, extreme and outrageous conduct and extreme disabling emotional response.

[¶ 35.] Hayes claims the trial court erred in the grant of summary judgment on this count. He alleges the defendants, among other things, changed the emergency room policy so he would have to be on call 24 hours a day, 7 days a week, they mistreated his patients, manipulated his mail, tampered with his patient charts and singled him out for review before the Clinical Monitoring Committee. He alleges that as a result of this conduct he suffered a variety of symptoms. He claims he provided sufficient evidence for both elements to show the existence of a genuine issue of material fact.

[¶ 36.] In *First Nat. Bank of Jacksonville v. Bragdon*, we first recognized the tort of intentional infliction of emotional distress. 84 S.D. 89, 167 N.W.2d 381 (S.D. 1969). The essential elements for a prima facie case of intentional infliction of emotional distress include:

(1) an act by defendant amounting to extreme and outrageous conduct;

(2) intent on the part of the defendant to cause plaintiff severe emotional distress;

(3) the defendant's conduct was the cause in fact of plaintiff's injuries; and

(4) the plaintiff suffered an extreme disabling emotional response to defendant's conduct.

*Kjerstad v. Ravellette Publications, Inc.*, 517 N.W.2d 419, 428 (S.D.1994).

### [¶ 37.] i. Extreme & outrageous conduct

[¶ 38.] The defendants claim Hayes failed to meet the first element for the tort of intentional infliction of emotional distress. They argue no reasonable person could construe their actions to be so extreme or outrageous as to permit recovery. Whether the defendants' conduct was extreme and outrageous is initially an issue for the court. *Richardson v. East River Elec. Power Co-op.*, 531 N.W.2d 23, 27 (S.D.1995).

[¶ 39.] Viewing the evidence in the light most favorable to Hayes, placing him on emergency room call 24 hours a day seven days a week, mistreating his patients, manipulation of his mail, tampering with his patient charts and singling him out for review before the Clinical Monitoring Committee could be considered extreme or outrageous. We find Hayes did present sufficient evidence so reasonable minds could differ. Therefore, as to this issue, this is ultimately a factual question for the jury. *Petersen v. Sioux Valley Hosp. Ass'n*, 486 N.W.2d 516, 519–20 (S.D.1992), *reh'g granted, Petersen v. Sioux Valley Hosp. Ass'n*, 491 N.W.2d 467 (S.D.1992).

[¶ 40.] Additionally, the defendants claim the alleged acts of outrageous conduct are privileged and cannot form a claim for intentional infliction of emotional distress. Their authority for this proposition consists of a comment from the Restatement 2d of Torts. The comment notes that

conduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances. The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.

Restatement (Second) of Torts § 46 cmt g (1965). We do not agree with the defendants' claim of privilege as they fail to detail exactly what conduct they are claiming is privileged. Furthermore, we are not persuaded by a comment in the Restatement that provides no other authority and states "[such] cases have not arisen." *Id.*

### [¶ 41.] *ii. Extreme, disabling emotional response*

[¶ 42.] The trial court also found Hayes failed to meet the fourth element for the tort of intentional infliction of emotion distress, he failed to suffer an extreme, disabling emotional response to the defendants' conduct. Hayes claims his reaction to the defendants' conduct was sufficient to create a genuine issue of material fact as to this element of the cause of action. He claims he has suffered stress, humiliation, mental anguish, weight loss and a prolonged inability to sleep at night as a result of the defendants' actions.

[¶ 43.] A review of South Dakota cases concerning intentional infliction of emotional distress reveals stress, humiliation or mental anguish are enough to present a case to a jury. *See Richardson,* 531 N.W.2d at 27. ("We have also noted intentional infliction of emotional distress includes reckless conduct resulting in emotional distress."); *Kjerstad,* 517 N.W.2d at 429 (claimants alleged they suffered from physical symptoms, difficulty sleeping and nervousness); *Bass v. Happy Rest, Inc.,* 507 N.W.2d 317, 323 n. 22 (S.D. 1993) (evidence of emotional distress consisted of depression and other symptomatic emotional distress); *Petersen I,* 486 N.W.2d at 519 *reh'g granted, Petersen II,* 491 N.W.2d 467 (extremely stressful conversations were enough to bring an intentional infliction of emotional distress case before the jury). There is a genuine issue of material fact as to this element. As such, summary judgment was improper.

[¶ 44.] We reverse and remand this issue to the trial court for trial.

### [¶ 45.] *c. Breach of fiduciary duty*

[¶ 46.] Hayes claims a breach of fiduciary duty on the part of the shareholders of BHMC and NHMAI. He also alleges a breach of fiduciary duty against the partners of Lupus and NHMA. He did not allege this cause of action against NHGH. The trial court found that the scope of all defendants' fiduciary duties was limited and defined by the language of the contract. Finding there was no fiduciary duty owed Hayes under the contract or after his termination, the trial court dismissed this count.

[¶ 47.] Hayes claims the trial court's analysis regarding the breach of fiduciary duty is erroneous. He alleges there was a fiduciary relationship between himself and his fellow shareholders and partners. He argues this fiduciary relationship was breached when the defendants held a secret meeting in June 1992, when Dr. McLaughlin met with Homestake to gather support for Hayes termination and subsequently when he was terminated. Hayes argues that the duty continued after his termination and the defendants continued to breach it by returning all his mail to sender, abusing his patients and attempting to prevent him from re-establishing his practice in Deadwood.

### [¶ 48.] *i. Shareholders fiduciary duty*

[¶ 49.] Hayes alleges a breach of fiduciary duty by the shareholders of BHMC and NHMAI. Both of these entities are closely held corporations in which Hayes held an interest before his termination. The defendants were officers, directors and shareholders of NHMAI and BHMC when Hayes was terminated.

[¶ 50.] "The existence of a fiduciary duty and the scope of that duty are questions of law for the trial court." *Landstrom,* 1997 SD 25 at ¶ 84, 561 N.W.2d at 18 (citing *Garrett v. BankWest, Inc.,* 459 N.W.2d 833, 839 (S.D.1990)). We have said: "corporate officers and directors are held to a high degree of diligence and due care in the exercise of their fiduciary duties to shareholders." *Case v. Murdock,* 488 N.W.2d 885, 889–890 (S.D.1992) (citing *Mobridge Community Industries v. Toure,* 273 N.W.2d 128, 133 (S.D.1978)). Corporate directors hold a fiduciary position in respect to the shareholders and are required to exercise good faith in all corporate transactions. *Id.* (citing *Schurr v. Weaver,* 74 S.D. 378, 384, 53 N.W.2d 290, 293 (1952)).

[¶ 51.] We have recognized that officers and directors have a fiduciary duty when dealing with minority shareholders. *See Case,* 488 N.W.2d at 889–890 (officers and directors of a corporation owe a fiduciary duty to shareholders). This same rationale supports the adoption of a fiduciary duty

between dominant shareholders and minority shareholders. *See Linge v. Ralston Purina Co.,* 293 N.W.2d 191, 194 (Iowa 1980).

[¶ 52.] "[I]n almost every state, majority, dominant, or controlling shareholders, or a *group of shareholders acting together* to exercise effective control, are held to owe a fiduciary duty to minority shareholders." *Moore v. Maine Industrial Services, Inc.,* 645 A.2d 626, 628 (Me.1994) (citation & internal quotation omitted) (emphasis added). Clearly, our case law has established there was a fiduciary duty owed to Hayes by the corporate defendants.

### [¶ 53.] *ii. Partners fiduciary duty*

[¶ 54.] We have said that the duty between partners is "characterized by a loyalty of the highest order." *Glanzer v. St. Joseph Indian School,* 438 N.W.2d 204, 211 (S.D.1989).

> A fiduciary duty is an obligation arising from the intimacy of the parties' relationship, and it is owed from a general partner to a limited partner.... When acting for the partnership and the limited partners, the general partner, as a fiduciary, must walk a moral path above that tread by other members of the economic marketplace. The general partner thus shoulders a heavy burden.

*Id.* at 211 (internal citation omitted). *See also Pear v. Grand Forks Motel Associates,* 553 N.W.2d 774, 783 n. 6 (N.D.1996). ("The relationship between partners is confidential and fiduciary; they are trustees for each other, and they bear the obligation of the utmost good faith and integrity in their dealings with one another.")

[¶ 55.] There is a long-established rule in South Dakota that partners are in a fiduciary relationship to each other. *Betts v. Letcher,* 1 S.D. 182, 197, 46 N.W. 193, 198 (1890). Application of these principle presents a question of fact as to whether the defendants breached their fiduciary duty as partners.

### [¶ 56.] *iii. Conclusion*

[¶ 57.] As there was a fiduciary duty owed Hayes by both the shareholders and the partners, we find there is a material question of fact whether this duty was breached. For example, there is evidence the defendants' conducted a secret meeting to devise a method of ridding themselves of Hayes and evidence that they interfered with Hayes' attempt to re-locate his practice. Viewing the facts in the light most favorable to Hayes we find a genuine issue of material fact. We reverse and remand to the trial court.

### [¶ 58.] *d. Breach of contract*

[¶ 59.] On July 2, 1992, the BHMC board of directors, except for Hayes, voted unanimously to terminate the medical services contract of Hayes, P.C. Hayes, P.C.'s original medical service contract provided in part that each party would have the right to terminate the contract by giving sixty-days prior written notice and the president of BHMC would have the power to terminate the contract with the individual professional corporation upon approval of ¾ majority of the board of directors. A 1990 revision to the Medical Services Contract provided for termination without cause, if the termination was approved by the entire board of directors except the individual professional corporation to be terminated.[7] This revision was added to the contracts of all the practicing doctors so that BHMC could terminate a doctor without cause.

[¶ 60.] It is Hayes' position that since the medical services contract was with Hayes, P.C., he was individually entitled to vote on the termination. His argument follows that to have the unanimous consent to terminate the contract of Hayes P.C. without cause Hayes individually must vote in favor of termination.

[¶ 61.] The trial court found there was no distinction between Hayes and Hayes, P.C. for the purpose of construing the contractual terms. Therefore, under the contract, Hayes

---

7. The provision reads as follows:
   BHMC may terminate this Agreement by giving sixty (60) days prior written notice to Con-

tractor without cause if said termination is approved by all of the members of the Board of Directors except the Contractor to be terminated.

was not allowed a vote to determine whether Hayes, P.C. should be terminated. This count was also dismissed in summary judgment.

[¶ 62.] As construction of a written contract is a question of law we are free to read the contract de novo. *Olson v. United States Fidelity and Guar. Co.,* 1996 SD 66, ¶ 6, 549 N.W.2d 199, 200. "The primary rule in construction of contracts is that the court must, if possible, ascertain and give effect to the mutual intention of the parties." *S & S Trucking v. Whitewood Motors, Inc.,* 346 N.W.2d 297, 299 (S.D.1984) (citing *GMS, Inc. v. Deadwood Social Club, Inc.,* 333 N.W.2d 442 (S.D.1983); *Forester v. Weber,* 298 N.W.2d 96 (S.D.1980)). "In determining the intent of the parties, we must consider the entire contract." *Id.* (citing *Chord v. Pacer Corp.,* 326 N.W.2d 224 (S.D.1982)).

[¶ 63.] We find the contract is clear and Hayes does not get to vote on his termination. To follow Hayes' interpretation would mean that the board would never be able to terminate anyone without cause. This would defeat the intentions of the parties in contracting under the 1990 amendment, as they were seeking a means to terminate "without cause" under the contract. As there is no genuine issue of material fact as to this issue, summary judgment was proper.

[¶ 64.] Hayes also raises the claim of wrongful termination. As Hayes termination was completed according to the contract provisions and he could be terminated without cause we find this argument to be without merit. We affirm.

[¶ 65.] MILLER, Chief Justice, and SABERS and KONENKAMP, Justices, and TRANDAHL, Circuit Judge, concur.

[¶ 66.] TRANDAHL, Circuit Judge, sitting for AMUNDSON, Justice, disqualified.

