2002 SD 102

**ST. ONGE LIVESTOCK COMPANY, LTD., Plaintiff and Appellant,**

v.

**Randy CURTIS, Dean Strong, and Belle Fourche Livestock Auction, Inc., Defendants and Appellees.**

**No. 22159.**

Supreme Court of South Dakota.

Considered on Briefs May 28, 2002.

Decided Aug. 14, 2002.

Michael F. Marlow, Sheila S. Woodward, Steven K. Huff, Johnson, Heidepriem, Miner, Marlow and Janklow, L.L.P., Yankton, for plaintiff and appellant.

Kenneth E. Barker, John W. Burke, Belle Fourche, for defendants and appellees.

GILBERTSON, Chief Justice.

[¶1.] Randy Curtis (Curtis) accepted an offer from Dean Strong (Strong) and left St. Onge Livestock Company, Ltd. (St. Onge) to work for Belle Fourche Livestock Exchange, Inc. (Belle Fourche). St. Onge sued Strong and Belle Fourche for tortious interference with a business relationship. The trial court granted summary judgment for Strong and Belle Fourche. We reverse and remand.

## FACTS AND PROCEDURE

[¶2.] Curtis began working for St. Onge as a field man in 1990. Over a period of nine years, Curtis worked his way up to manager of St. Onge. In 1995, an incentive plan was discussed between Curtis and Gail Sohler (Sohler), the owner of St. Onge. Sohler agreed to a $.025 bonus for each head of cattle or sheep sold at St. Onge in return for Curtis' signature on an employment agreement containing a non-compete clause. Curtis, however, refused to sign the agreement.

[¶3.] In 1996, the incentive plan was again discussed. Curtis intended to use the bonus money to eventually buy out Sohler. This time, Sohler agreed to pay Curtis a $.05 bonus for each head of cattle and sheep sold at St. Onge. In return, Curtis would be required to sign an employment agreement with a non-compete and non-solicit clause. Curtis claimed that he was "surprised" and "disgusted" when Sohler presented him with the agreement, even though it was nearly identical to the one proposed in 1995. After Curtis had his attorney review the agreement, Curtis requested and received several changes to the contract. Some of these changes included alterations in the non-compete provision. Curtis then signed and executed the revised agreement on May 1, 1996. Sohler paid Curtis $21,918.13 over a four-year period under the incentive program.

[¶4.] On Monday, July 26, 1999, Strong, the primary shareholder and president of Belle Fourche, asked Curtis to leave St. Onge and come to work for Belle Fourche. Curtis informed Strong that he had executed an employment agreement with St. Onge, which he thought would prevent him from accepting employment from Belle Fourche. Three days later, Strong and Curtis took the employment agreement to Ken Barker (Barker), Belle Fourche's attorney in this matter, to determine its validity. According to both Curtis and Strong, Barker believed the agreement to be reasonably well drafted. Curtis and Strong, however, decided to go ahead with the employment swap because they believed Sohler would not enforce the contract.

[¶5.] On Thursday, August 5, 1999, Curtis informed Sohler that he was leaving and that Friday would be his last day. On Saturday, August 7, 1999, an advertisement appeared in the Belle Fourche city newspaper announcing that Curtis had changed employment and was now managing Belle Fourche. Curtis officially began working for Belle Fourche on Monday, August 9.

[¶6.] Curtis admitted in deposition testimony that, when he began working for Belle Fourche, he solicited business from customers who had sold livestock at St. Onge within the last ten years.[1] St. Onge initially identified six customers that had switched to Belle Fourche when Curtis left. After an inspection of Belle Fourche's records, that list grew to 23 customers who had either substantially de-

---

1. There are several allegations from both parties that discovery in this case was not entirely forthcoming. We find it difficult to com- prehend that Curtis could admit soliciting people he knew to be previous St. Onge customers and then forget their names.

creased or eliminated their business with St. Onge since Curtis' departure. According to state livestock reports, sales at St. Onge since Curtis' defection have decreased by 19,398–head of cattle. Sales at Belle Fourche have since increased in a strikingly similar number: 18,039–head of cattle. Strong acknowledged in deposition testimony that the increase in sales at Belle Fourche was at least partly attributable to Curtis. Curtis also admitted offering jobs to two St. Onge employees just after becoming manager at Belle Fourche.

[¶ 7.] On January 13, 2000, St. Onge sued Curtis, Strong and Belle Fourche for breach of contract, breach of fiduciary duty and breach of the duty of loyalty. St. Onge also sued Strong and Belle Fourche for tortious interference with a contract, asking for punitive damages. Both parties moved for partial summary judgment. The trial court held that Curtis had breached his employment agreement, but it released Strong and Belle Fourche from the breach of contract claim because they were never parties to the contract.

[¶ 8.] The court also held that the non-compete agreement was "overbroad in range of activities, duration and area" and, therefore, violative of SDCL 53–9–11. The court excised the illegal terms and held the agreement enforceable as amended. The court stated:

> [T]here is little doubt that [Curtis] violated any reasonable interpretation of those factors. It is undisputed that [Curtis] began working at Belle Fourche Livestock just one day after he left [St. Onge's] employ. Belle Fourche Livestock is in the same business as that of [St. Onge] and located approximately ten miles from [Curtis'] former principal place of employment. The court specifically rejects [Curtis'] argument that the area should be confined to Lawrence County.

Regardless of the duration of the non-compete agreement, the court determined that Curtis had breached the agreement because Curtis began working for Belle Fourche within 24 hours of quitting at St. Onge.

[¶ 9.] Finally, the tortious interference claim, while not included in either party's motion for summary judgment, was added by stipulation of the parties at the hearing on September 5, 2000. The court held that a valid business relationship existed between Curtis and St. Onge and that Strong and Belle Fourche knew of the relationship. But the court went on to hold: (1) there were no specific facts supporting a finding of intentional and unjustified interference on the part of Defendants; (2) St. Onge had presented no evidence that Defendants' interference caused the harm sustained; and (3) no evidence of damages had been presented. Therefore, the court granted summary judgment in favor of Strong and Belle Fourche. St. Onge appeals, raising only one issue:

> Whether a genuine issue of material fact exists with regard to Strong and Belle Fourche's intentional and unjustified interference, St. Onge's resultant harm, and damages.

## STANDARD OF REVIEW

[¶ 10.] Our standard for reviewing a trial court's grant of a motion for summary judgment is well settled:

> Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. All reasonable infer-

ences drawn from the facts must be viewed in favor of the non-moving party. The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law.

*Hayes v. N. Hills Gen. Hosp.*, 1999 SD 28, ¶ 12, 590 N.W.2d 243, 247 (quoting SDCL 15–6–56(c)) (internal citations and additional citations omitted). Therefore, summary judgment requires not only that "there be no material facts at issue, but also that there be no genuine issue on the *inferences* to be drawn from those facts." *Mueller v. Cedar Shore Resort, Inc.*, 2002 SD 38, ¶ 10, 643 N.W.2d 56, 61–62 (emphasis added).

## ANALYSIS AND DECISION

[¶ 11.] **Whether a genuine issue of material fact exists with regard to Strong and Belle Fourche's intentional and unjustified interference, St. Onge's resultant harm, and damages.**

[¶ 12.] This Court recognized the claim of tortious interference with a business relationship in *Tibke v. McDougall*, 479 N.W.2d 898 (S.D.1992). There, we defined the tortious interference claim to include the following essential elements:

> (1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an intentional and unjustified act of interference on the part of the interferer; (4) proof that the interference caused the harm sustained; and (5) damage to the party whose relationship or expectancy was disrupted.

*Id.* at 908. But to withstand a summary judgment motion, a claimant need only demonstrate "an intentional interference with the business relationship which results in damage to the plaintiff." *Id.* (citations omitted).

[¶ 13.] In the case at bar, the trial court ruled that St. Onge had failed to demonstrate a genuine issue of material fact existed with respect to elements 3, 4 and 5. The court found that a valid business relationship existed and that Strong and Belle Fourche knew of that relationship. Yet, the court denied the claim on the basis that St. Onge had presented no specific evidence that would create a genuine issue of material fact as to whether there was an intentional and unjustified interference, whether that interference caused harm, and whether the harm resulted in damages. We disagree.

[¶ 14.] **a. Intentional and Unjustified Interference**

[¶ 15.] There is no dispute that Strong and Belle Fourche knew of, and intentionally interfered with, the employment agreement between Curtis and St. Onge. Strong knew Curtis was employed by St. Onge when he offered Curtis the job. Strong also knew, as Curtis immediately informed him, that Curtis had executed an employment agreement with St. Onge that would prevent him from accepting employment from Belle Fourche. Even after having an attorney review the agreement, the two chose to disregard the contract and go ahead with Curtis' employment at Belle Fourche because they believed St. Onge would not enforce the non-compete clause. Strong and Belle Fourche knew the result that was substantially certain to occur because of Curtis' switch to Belle Fourche. Thus, the analysis of element three focuses only upon whether that intentional interference was unjustified.

[¶ 16.] When analyzing a claim of tortious interference in the case of *Landstrom v. Shaver*, we recognized that "[t]his cause of action is the recognition that valid business relationships and expectancies are entitled to protection from *unjustified*

interference." 1997 SD 25, ¶ 81, 561 N.W.2d 1, 18 (emphasis added). We did not, however, define what constitutes unjustified interference. Both parties in this case refer to the Restatement (Second) of Torts § 767, which outlines the factors to consider in determining whether the interference was unjustified. Those factors include:

> (a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the other with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference; and (g) the relations between the parties.

Restatement (Second) of Torts § 767 (1979).[2] An application of these factors to the events of this case indicates, contrary to the trial court's ruling, that genuine issues of material fact do exist.

[¶ 17.] Strong actively recruited Curtis when he knew Curtis was currently managing St. Onge, an employer for whom Curtis had worked nearly nine years. Neither Strong nor Belle Fourche were daunted by the existence of a valid and enforceable employment agreement containing a non-compete clause. While Strong could have hired someone else, he was attracted to his competitor's manager. He chose a man who had proven himself a successful livestock sales manager with significant customer contacts. Less than 24 hours after Curtis' resignation, in which he gave only one day's notice, Belle Fourche was running an ad in the city newspaper informing potential customers of Curtis' switch. Then Curtis attempted to lure away two other St. Onge employees while soliciting previous St. Onge customers. Curtis even testified that he informed Strong of this solicitation. When asked to confirm if Curtis had ever informed him of a customer's switch from St. Onge to Belle Fourche, Strong replied, "I suppose when they finally come. Guys that he'd run on to." But Strong could not remember any names. These actions are enough to raise a question of fact, an issue that should be resolved by a jury. *See Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust,* 201 Ariz. 474, 38 P.3d 12, 32 (2002) (analyzing wrongful conduct in light of factors, but giving most weight to nature of actor's conduct and actor's motive); *Q.E.R. v. Hickerson,* 880 F.2d 1178, 1183–84 (10thCir.1989) (stating that balancing of factors to determine whether conduct was justified is task for fact finder); *Hennum v. City of Medina,* 402 N.W.2d 327, 336 (N.D.1987) (stating "whether or not interference with contractual relations is justified is basically a question of fact.").

[¶ 18.] **b. Resultant Harm**

[7] [¶ 19.] St. Onge has also alleged specific facts with which to infer that it sustained harm as a direct result of this interference. There is no dispute that, but for Strong's inducement, Curtis would not have left St. Onge. Indeed, there was evidence submitted to indicate Curtis was considering buying out Sohler's interest in St. Onge. Since Curtis' departure, livestock sales at St. Onge have fallen by approximately the same number as sales at Belle Fourche have risen.[3] Strong and

---

**2.** While instructive, we caution that these factors are neither exhaustive nor determinative.

**3.** We also note that a customer's switch from St. Onge to Belle Fourche is not the only way for St. Onge to sustain harm. For example, if a customer's only reason for continuing business at St. Onge was his familiarity with Curtis, upon Curtis' departure, that customer may choose to take his business to the Sturgis Livestock Exchange. Simply because that

Belle Fourche claim that St. Onge has failed to prove that this change in sales resulted from Curtis' defection to Belle Fourche. But the procedural posture of this case requires that all reasonable inferences must be drawn in favor of the non-moving party. Strong acknowledged that Belle Fourche's increase in business was due, at least in part, to Curtis. Therefore, it is reasonable to infer that Curtis' change in employment was, at least in part, responsible for St. Onge's decrease in business.

[¶ 20.] In addition, St. Onge identified a minimum of 23 customers that either eliminated or substantially diminished their business with St. Onge, in favor of Belle Fourche, after Curtis' departure. In fact, this was likely the purpose behind the August 7 advertisement and Curtis' admitted solicitation of St. Onge customers. Yet, the trial court incorrectly determined that because St. Onge did not produce affidavits from each of these customers, the evidence was insufficient to create a genuine issue of material fact. *See Hayes,* 1999 SD 28 at ¶ 31, 590 N.W.2d at 250.

[¶ 21.] We have previously held that such evidence may be further developed at trial, so long as the plaintiff has demonstrated that the defendant has intentionally and unjustifiably interfered with a legitimate business expectancy. *See Setliff v. Akins,* 2000 SD 124, ¶¶ 36–41, 616 N.W.2d 878, 889–890 (holding plaintiff's claim that the departure of one of his doctors jeopardized level of patient care and tarnished clinic's good will, was enough to withstand summary judgment); *Ibid.* (holding specific listing of lost patients not necessary to withstand summary judgment). This evidentiary hurdle is even lower in a case where, unlike *Setliff* and *Hayes,* the plain-

tiff is only alleging that the lost customers were the resultant harm. *See Corcoran v. Land O'Lakes, Inc.,* 39 FSupp2d 1139 (N.D.Iowa 1999) (comparing evidentiary standards of tortious interference with a contract and tortious interference with a prospective business relation).

■■ [¶ 22.] St. Onge has not alleged, as it could have, that Defendants Curtis, Strong and Belle Fourche also tortiously interfered with the business expectancies between St. Onge and its customers. " 'One is liable for commission of this tort [if he] interferes with business relations of another, *both existing and prospective,* by inducing a third person not to enter into or continue a business relation with another or by preventing a third person from continuing a business relation with another.' " *Hayes,* 1999 SD 28 at ¶ 22, 590 N.W.2d at 248 (emphasis added) (quoting *N. Plumbing & Heating, Inc. v. Henderson Bros., Inc.,* 83 Mich.App. 84, 268 N.W.2d 296, 299 (1978)). Instead, St. Onge is alleging only that Strong and Belle Fourche's tortious interference with the business contract between St. Onge and Curtis resulted in the loss of customers and the associated revenue. We conclude the evidence is sufficient to raise a genuine issue of material fact as to the resultant harm to St. Onge.

### [¶ 23.] c. Damages

■■ [¶ 24.] Because St. Onge has raised genuine issues of material fact as to unjustified interference and resultant harm, St. Onge is entitled to take the issue of damages to trial. *See Jorgenson v. Vener,* 2002 SD 20, ¶ 13, 640 N.W.2d 485, 487–88 (citing South Dakota Constitution Article VI § 6). Nevertheless, the trial court pointed out in its memorandum opin-

customer does not follow Curtis to Belle Fourche, does not mean Curtis' departure has

not still occasioned the loss of that customer.

544

ion that, even if St. Onge had demonstrated that harm had resulted from the interference, it had submitted no evidence of monetary damages, thus making summary judgment proper. However, Strong and Belle Fourche instigated the breach of a valid employment agreement containing a non-compete clause. At a minimum, the expenses St. Onge incurs in enforcing such an agreement are recoverable as money damages. *See Kallok v. Medtronic, Inc.,* 573 N.W.2d 356, 363–64 (Minn.1998). In addition, St. Onge has identified at least 23 customers that it likely lost as a result of Curtis' transfer to Belle Fourche. If St. Onge can prove that Curtis' departure occasioned the loss of even one customer, then St. Onge is entitled to damages in the amount of that lost revenue. Thus, when damages can be reasonably inferred from the facts and circumstances, as is the case here, the amount of such damages is a question of fact reserved for a jury.

### Conclusion

[¶ 25.] As we stated in *Tibke:* [S]ummary judgment is not a substitute for trial; a belief that the non-moving party will not prevail at trial is not an appropriate basis for granting the motion on issues not shown to be a sham, frivolous or unsubstantiated; summary judgment is an extreme remedy and should be awarded only when the truth is clear[;] and reasonable doubts touching upon the existence of a genuine issue of material fact should be resolved against the movant.

479 N.W.2d at 904 (citations omitted). Given this standard with which summary judgment is governed, we conclude that St. Onge has submitted sufficient evidence to establish genuine issues of material fact on the questions of whether there was unjustified interference, resultant harm, and damages. Therefore, we reverse the lower court's decision and remand for a trial on the merits.

[¶ 26.] SABERS, AMUNDSON, KONENKAMP, and ZINTER, Justices, concur.