SABERS, Justice
(dissenting).
[¶ 43.] The trial court erred in granting summary judgment. Summary judgment is a harsh remedy that rarely should be granted. Heib v. Lekrkamp, 2005 SD 98, ¶ 45, 704 N.W.2d 875, 889-90 (Sabers, J., dissenting) (noting summary judgment is an extreme remedy only to be used “when the truth is clear”); Richards v. Lenz, 539 N.W.2d 80, 83 (S.D.1995) (“Summary judgment is a drastic remedy, and should not be granted unless the moving party has established a right to a judgment with such clarity as to leave no room for controversy.”). It is not a substitute for a trial. Piner v. Jensen, 519 N.W.2d 337, 339 (S.D.1994) (citing Dahl v. Sittner, 429 N.W.2d 458, 461 (S.D.1988)). The court may not grant summary judgment simply because it believes the plaintiffs case will not succeed at trial. Wulf v. Senst, 2003 SD 105, ¶ 17, 669 N.W.2d 135, 141.
[¶ 44.] In a constructive discharge case, summary judgment should only be granted if there is “a complete absence of probative facts supporting plaintiffs’ position, such that no reasonable juror could have found that they had been constructively discharged .... ” Ogden v. Wax Works, Inc., 214 F.3d 999, 1005-06 (8th Cir.2000). Furthermore, summary judgment should rarely be granted in the area of discrimination. Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir.1994). “Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant.” Id.
[¶ 45.] In this case, the circuit court granted summary judgment despite the existence of genuine issues of material fact. In granting summary judgment, the court erroneously viewed the evidence in the light most favorable to First Century, instead of Anderson. All evidence and reasonable inference derived from it should be viewed in the light most favorable to the non-moving party. St. Onge Livestock Company, Ltd., v. Curtis, 2002 *53 SD 102, ¶ 10, 650 N.W.2d 537 (quoting Mueller v. Cedar Shore Resort, Inc., 2002 SD 38, ¶ 10, 643 N.W.2d 56, 61-62); St. Paul Fire & Marine Ins. Co., v. Engelmann, 2002 SD 8, ¶ 15, 639 N.W.2d 192, 199 (“Not only must the facts not be in issue, but also there must be no genuine issue on the inferences to be drawn from those facts.”)- If the evidence is viewed using the proper standard, then we should reverse because there are genuine issues of material fact that a jury should decide.
[¶ 46.] Constructive discharge occurs “when an employer, through action or inaction, renders an employee’s working conditions so intolerable that the employee essentially is forced to terminate [his] employment.” Turner v. Honeywell Fed. Mfg. & Tech., L.L.C., 336 F.3d 716, 724 (8th Cir.2003) (additional citations omitted). A constructive discharge can occur if the employee “reasonably believes there is no chance for fair treatment....” Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 574 (8th Cir.1997). Anderson alleged sufficient facts for a reasonable jury to conclude that he was faced with an intolerable work environment and that First Century failed to conduct a prompt and adequate investigation to remedy the problem. Anderson reported Handel’s suspicious loan activity to Board member Thompson. Anderson claims Thompson did not take prompt and adequate corrective action. He alleges that Thompson only made phone calls to account examiners and asked them if any problems were noticed during the audits. However, the audits conducted in the past were insufficient to discover these specific allegations against Handel. Moreover, Thompson did not alert any other board member, did not speak with Handel or anyone else at First Century regarding the allegations, nor did he open the documents Anderson provided until July 1, 2002.
[¶ 47.] During the course of Thomson’s “investigation” Anderson was kept in the dark and had to continue working for Handel. There was testimony the office environment was “intense.” Anderson had to worry the company would think he was angling for Handel’s job, disbelieve his intentions and fire him. This was not over a couple days, but over a six week period. There is evidence that Handel and others knew of Anderson’s allegations and had informed other board members that he was conspiring against her to get her job.
[¶ 48.] There is evidence Anderson thought he could be fired. He testified Thompson told him, “heads were going to roll” and “s* *t was going to hit the fan.” While he testified that it was Handel’s head that was going to roll, he later indicated that he panicked and thought the head that was going to roll could have been his own. Whether his fear of “being fired” and of “having his head roll” were reasonable are genuine issues of material fact for the jury, not the judge. The jury should be allowed to weigh the evidence and testimony in order to determine whether Anderson reasonably suffered from an intolerable work environment and feared for his job.
[¶ 49.] Furthermore, when he asked for assurances and support from Thompson regarding his job and potentially resigning, Thompson replied “You do what you gotta do. Just tell her why.” Deposition of Anderson, p. 30, lines 5-25; p. 31, lines 1-3, Anderson v. First Century Fed. Credit Union, (No. 24164). There are several sufficient facts that, if viewed in the light most favorable to Anderson, create genuine issues of material fact for the jury to decide.
[¶ 50.] Instead of viewing the facts in the light most favorable to Anderson, the circuit court decided genuine issues of material fact against Anderson. The circuit *54 court concluded that absent direct threats of termination, Anderson should have waited for termination. It also stated that Anderson should have waited longer before resigning or waiting until the board meeting on July 1, 2002. Furthermore, it noted that it believed Anderson was angling for Handel’s job. The circuit court noted:
I just don’t understand why he didn’t wait. What was the harm for waiting one more day to find out what the Board was going to do? State his case. Then find out whether or not there really was an intimidating work environment there or whether or not he was going [to] have the support of the Board. Certainly nothing that Mr. Thompson had done up to that point had indicated in any way, shape, or form that he was going to hang Mr. Anderson out to dry.
Brief of Appellant, p. 13, Anderson (No. 04-2192) (quoting Transcript of Summary Judgment hearing p. 29-30). These findings were made by viewing the facts in the light most favorable to First Century, not to- Anderson as required. In fact, the circuit court erred in making findings favorable to First Century during summary judgment.
[¶ 51.] The jury should determine the ultimate question — whether Anderson was subject to constructive discharge. The jury should determine whether Anderson’s work environment was so intolerable that a reasonable person in that employee’s position would have felt compelled to resign. It is the function of the jury to determine whether Anderson’s actions were reasonable. This case should be reversed and remanded in order for the jury to determine the questions of fact.