2001 SD 6

**In the Matter of the ESTATE OF Lawrence HOLAN, Deceased.**

**No. 21373.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 25, 2000.

Decided Jan. 10, 2001.

Wally Eklund of Johnson, Eklund, Nicholson & Peterson, Gregory, SD, Attorneys for appellee Dennis Holan.

Michael W. Strain, Candi Thomson, Morman Law Firm, Sturgis, SD, Attorneys for appellants Judene Holan and Lynette E. Leiferman.

MILLER, Chief Justice

[¶ 1.] In this probate appeal, we decline to address the Proponents' constitutional challenge to a jury trial in a will contest. We affirm the trial court's denial of Proponents' motion for judgment n.o.v. and its ruling on the procedural order of examination of witnesses.

## FACTS

[¶ 2.] Lawrence and Evalyn Holan parented six children. This litigation involves three of the children. Lynette Leiferman and Judene Holan will be referred to collectively as Proponents. Dennis Holan will be referred to as Contestant.

[¶ 3.] Lawrence and Evalyn prepared wills in 1984. Evalyn died in 1991 and later that year Lawrence executed a new will. The 1991 will devised his home in Pukwana, South Dakota to Proponents and his farm property to Contestant, provided Contestant make payments over a fifteen-year period to his siblings equaling the appraised value of the land at the time of Lawrence's death. The 1991 bequest to Contestant was the same as that contained in the 1984 wills.

[¶ 4.] After Evalyn's death, Lawrence's health began to deteriorate and he began to rely on his children, especially Proponents and Contestant, to help him around in his home and to run errands. In 1993, Lawrence executed a codicil to his 1991 will, which reaffirmed the 1991 will, but added a new provision providing for the return to Contestant, upon Lawrence's

death, of rental payments he had made on the rural farm property since 1993. After executing the 1993 codicil, Lawrence delivered several handwritten notes confirming receipt of rental payments from Contestant and directing the payments be returned upon his death.

[¶ 5.] In 1995, Lawrence executed a general power of attorney appointing Proponents his attorneys-in-fact. Through a medical power of attorney, he also gave them the power to make medical decisions on his behalf should he become incapacitated. They never exercised any powers under either document.

[¶ 6.] On January 20, 1997, Lawrence met with his long time attorney to discuss various estate-planning matters. The attorney drafted documents for Lawrence to review with his children. Lawrence met again with his attorney on January 29, 1997 to discuss payment options for Contestant's bequest under the 1991 will. Contestant and his wife attended the meeting and informed Lawrence that they would not be financially capable of making the payments to his siblings in the amount contemplated in the 1991 will. After this meeting, Lawrence showed the estate planning documents to Proponents. They told Lawrence the documents were "ridiculous" and that it appeared to them his attorney was working for Contestant and not him.

[¶ 7.] On February 3, 1997, Proponent Judene delivered a note she had written, and Lawrence had signed, instructing the attorney that Lawrence wished to maintain his will in its current status and rejected use of the recent estate planning documents the attorney had drafted. A second note in Lawrence's handwriting instructed the attorney to make some minor changes to the 1991 will. Also on February 3, 1997, at the suggestion of Proponent Lyn-ette, Lawrence sought the advice of another attorney. This attorney drafted a will, which Lawrence executed on March 3, 1997, effectively revoking the 1991 will and 1993 codicil. The 1997 will devised only 80 acres of the rural farm property to Contestant, maintained the bequest of the Pukwana home to Proponents and divided the remaining rural farm property among all six of the children.

[¶ 8.] Lawrence died on April 11, 1998 survived by his six children. Proponents, who were named personal representatives in his 1997 will, offered the will for probate. Contestant challenged the will contending it was the product of undue influence and fraud. Proponents moved the court to bifurcate Contestant's claim for fraud and punitive damages from the will contest and asked the court to strike Contestant's request for a jury trial. The trial court granted the motion to bifurcate but denied the motion to strike the request for jury trial. The case was tried to a jury which rendered a verdict in favor of Contestant, finding undue influence in the procurement of the 1997 will. The trial court denied Proponents' motion for judgment notwithstanding the verdict or alternatively a new trial and entered judgment based on the jury verdict.* Proponents appeal.

## STANDARD OF REVIEW

▉▉▉▉ [¶ 9.] We review a trial court's ruling on a motion for directed verdict and judgment notwithstanding the verdict under the following standard:

A motion for a directed verdict under SDCL 15-6-50(a) questions the legal sufficiency of the evidence to sustain a verdict against the moving party. Upon such a motion, the trial court must determine whether there is any substantial evidence to sustain the action. The evidence must be accepted which is most

---

* Contrary to the finding of the jury, however, the trial court entered advisory findings of fact and conclusions of law holding that the 1997 will should be probated because it was not the product of undue influence. The trial court's stated purpose for doing so was to prevent the need to remand the case to him for trial if we had reversed his decision on the constitutional issue.

favorable to the nonmoving party and the trial court must indulge all legitimate inferences therefrom in his favor. If sufficient evidence exists so that reasonable minds could differ, a directed verdict is not appropriate. The trial court's decisions and rulings on such motions are presumed correct and this Court will not seek reasons to reverse. A motion for judgment n.o.v. is based on and relates back to a directed verdict motion made at the close of all the evidence. SDCL 15–6–50(b). Thus, the grounds asserted in support of the directed verdict motion are brought before the trial court for a second review. We review the testimony and evidence in a light most favorable to the verdict or the nonmoving party, "then without weighing the evidence [we] must decide if there is evidence which would have supported or did support a verdict[.]"

*Bland v. Davison County,* 1997 SD 92, ¶ 26, 566 N.W.2d 452, 460 (quoting *Sabag v. Continental,* 374 N.W.2d 349, 355 (S.D. 1985)). Accordingly, we apply the abuse of discretion standard when reviewing the trial court's ruling. *Id.* (citation omitted).

## DECISION

[¶ 10.] **1. Proponents waived their constitutional argument.**

[¶ 11.] Proponents challenge the constitutionality of a provision in the Uniform Probate Code that permits a jury trial "in a formal testacy proceeding and any proceeding in which any controverted question of fact arises as to which any party has a constitutional right to trial by jury." SDCL 29A–1–306. They assert that the statute impermissibly takes away the power granted to the judiciary implicit in the South Dakota State Constitution and South Dakota case law.

[¶ 12.] However, Proponents failed to notify the South Dakota Attorney General of their constitutional challenge as mandated by SDCL 15–6–24(c). Proponents did send the attorney general a copy of their notice of appeal to this Court and a transcript order, as well as a copy of their brief. However, these items do not constitute notice of a constitutional challenge contemplated under SDCL 15–6–24(c).

[¶ 13.] Although 15–6–24(c) is a rule of procedure and not jurisdiction, we have often stated, "[o]rdinarily, we will not rule on the constitutionality of a statute unless the attorney general has been notified. When an adjudication of unconstitutionality may seriously affect the general public, it is proper for the attorney general to appear on behalf of the Legislature and the people." *Kern v. City of Sioux Falls,* 1997 SD 19, ¶ 13, 560 N.W.2d 236, 239 (citing *West Two Rivers Ranch v. Pennington County,* 1996 SD 70, ¶ 15, 549 N.W.2d 683, 687; *Sioux Falls Argus Leader v. Young,* 455 N.W.2d 864, 870 (S.D. 1990); *Sharp v. Sharp,* 422 N.W.2d 443, 446 (S.D.1988)). The stated purpose of the rule is to permit the attorney general to intervene and fulfill his constitutional responsibility of defending the provisions of the constitution.

[¶ 14.] We will not address the constitutional challenge due to Proponent's failure to notify the attorney general. *Id.* The issue is too significant and important to the probate jurisprudence of this state to do so without giving the attorney general the opportunity to defend the challenged provisions.

[¶ 15.] **2. The evidence supports the jury's verdict.**

[¶ 16.] Contestant had the burden to prove the four elements of undue influence by a preponderance of the evidence:

Under our settled law, to establish the existence of undue influence a will contestant must prove four elements by a preponderance of the evidence: "(1) decedent's susceptibility to undue influence; (2) opportunity to exert such influence and effect the wrongful purpose; (3) a disposition to do so for an improper

purpose; and (4) a result clearly showing the effects of undue influence." *Matter of Estate of Unke*, 1998 SD 94, ¶ 12, 583 N.W.2d 145, 148 (citing *Matter of Estate of Elliott*, 537 N.W.2d 660, 662–63 (S.D.1995)); *see generally* SDCL 29A–3–407. As the contrary factual determinations of the jury and judge demonstrate, the evidence in this case was close.

██ [¶ 17.] It is not our place to weigh the evidence or credibility in this case. Our role is simply to ascertain whether evidence exists to support the jury verdict. We find that in this case there was.

[¶ 18.] When viewing the evidence in a light most favorable to the verdict, we recognize the jury heard testimony regarding the close nature of the relationship between Proponents and their father. The jury heard evidence involving the suspicious circumstances surrounding Lawrence's abrupt change in attorneys, and Proponents' involvement in the 1997 will drafting. Furthermore, the jury heard evidence about Lawrence's actions after executing the disputed 1997 will, which were inconsistent with that will.

[¶ 19.] We find there is sufficient evidence that clearly supports the verdict in favor of Contestant. The trial court did not abuse his discretion in denying Proponents' motion for judgment notwithstanding the verdict or alternatively a new trial.

[¶ 20.] **3. Circuit court did not abuse its discretion in denying Proponents' counsel cross-examination after Proponents examination during Contestant's case-in-chief.**

██ [¶ 21.] The scope, manner and order of cross-examination are matters within the discretion of the circuit court. SDCL 19–14–18; SDCL 19–14–19. Proponents recognize and we agree that the circuit court *may* permit cross examination by a party's own counsel after adverse examination during the opposing party's case-in-chief, but this is purely discretion-

ary with the circuit court. We will not reverse absent a showing of an abuse of discretion. We find no abuse of discretion in this case.

[¶ 22.] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.