2001 SD 69

Craig R. HAYES, M.D., and Craig R. Hayes, M.D., P.C., Plaintiff and Appellant,

v.

NORTHERN HILLS GENERAL HOSPITAL; Charles Schulz, Hospital C.E.O.; Black Hills Medical Center, P.C.; Lupus Partnership; Northern Hills Medical Associates, Inc.; Ruth M. McLaughlin, M.D.; Ruth M. McLaughlin, M.D., P.C.; Randall P. Graff, M.D., Individually and in his Capacity as Director of Northern Hills General Hospital; Randall P. Graff, M.D., P.C.; Thomas J. Groeger, M.D.; Individually and in his Capacity as Director of Northern Hills General Hospital; Thomas J. Groeger, M.D., P.C.; Reuben B. Trinidad, M.D., Individually and in his Capacity as Director of Northern Hills General Hospital; and Reuben B. Trinidad, M.D., P.C.; and Scott K. Ross, M.D., Defendants and Appellees.

Nos. 21490, 21516, 21522.

Supreme Court of South Dakota.

Argued Jan. 11, 2001.

Decided May 30, 2001.

Michael P. Reynolds of Quinn, Day & Barker, Gregory A. Eiesland of Johnson, Eiesland, Huffman & Clayborne, Mike Abourezk of Abourezk Law Firm, Rapid City, SD, Attorneys for plaintiff and appellant.

Edward C. Carpenter of Costello, Porter, Hill, Heisterkamp, Bushnell & Carpenter, Rapid City, SD, Attorneys for defendants Black Hills Medical Center and other physicians and appellees.

Jeffrey G. Hurd of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, SD, Attorneys for defendant and appellee Northern Hills General Hospital.

STEELE, Circuit Judge.

[¶ 1.] The trial court directed a verdict against Craig R. Hayes (Hayes) on his claim for intentional infliction of emotional distress. The jury found against Hayes on his claim for interference with business relations, but in his favor and against three individual physician defendants on his claim for breach of fiduciary duty, awarding $500 in compensatory damages and $3000 in punitive damages. Hayes appeals. We affirm.

## FACTS

[¶ 2.] Hayes was one of several physicians who formed the Black Hills Medical Clinic (BHMC), a closely held corporation, in 1981. Affiliated with BMHC were two partnerships, Canis Lupus and Northern Hills Medical Associates, and another closely held corporation, Northern Hills Medical Associates, Inc. All entities involved the same shareholders and partners. The clinic practice was very lucrative, partially due to its contract to provide medical services to the employees, retirees, and dependants of Homestake Gold Mine. By 1992, Hayes' relationship with the other shareholders of BHMC had deteriorated greatly. On July 2, 1992, pursuant to a shareholder agreement, the other shareholders voted to remove Hayes from BHMC.

[¶ 3.] After his termination from BHMC, Hayes asked Charles Schulz, the administrator of defendant Northern Hills General Hospital (NHGH) for space to set up a temporary clinic for lab and radiology services. Schulz told Hayes that NHGH would work with him on a trial basis. NHGH prepared two rooms, and Hayes began to practice there on July 6, 1992. On July 28, 1992, a written lease with a 60–day notice of termination provision was executed. Hayes' clinic proved to be problematic for NHGH, mostly due to its location near the drug, alcohol, and mental health units, along with parking and telephone system problems. The lease was terminated on August 13, 1992.

[¶ 4.] In November 1992, Hayes opened a clinic in Spearfish, but continued to see patients in Deadwood two days a week. After Hayes' termination from BHMC, NHGH's administrator drafted the emergency call schedule for NHGH, rotating call among physicians. In March 1993, due to an inability to comply with a 20–minute response time, Hayes reduced his staff privileges at NHGH from active to courtesy staff. In 1995, Hayes joined

Queen City Medical Center. He also resumed his active staff privileges at NHGH.

[¶ 5.] This lawsuit was originally filed on August 4, 1993, setting forth sixteen counts on various legal and equitable theories. The trial judge bifurcated the legal and equitable issues, and awarded Hayes $102,765.95 for his interest in BHMC. The court then granted summary judgment in favor of defendants on all legal counts. On appeal, this Court reversed and remanded the counts of tortious interference with prospective business advantage, intentional infliction of emotional distress, and breach of fiduciary duty. *Hayes v. Northern Hills General Hosp.*, 1999 SD 28, 590 N.W.2d 243, 248–250 (*Hayes I* ). On remand the trial court directed a verdict in favor of the defendants on the claim of intentional infliction of emotional distress. The jury found in favor of the defendants on the claim of interference with prospective business relations. The jury further found in favor of Hayes and against three individual physician defendants on the claim of breach of fiduciary duty, awarding $500 in compensatory damages and $3000 in punitive damages.

## DECISION

[¶ 6.] Hayes raises eleven issues on appeal, which we consolidate to five.

## ISSUE ONE

[¶ 7.] **Whether the trial court properly directed a verdict on Hayes' claim for intentional infliction of emotional distress.**

[¶ 8.] If sufficient evidence exists so that reasonable minds could differ, a directed verdict is not appropriate. The trial court's decisions and rulings on such motions are presumed correct and this Court will not seek reasons to reverse. *U.S. v. State*, 1999 SD 94, 598 N.W.2d 208. In an intentional infliction of emotional distress claim, the question whether the defendant's conduct was extreme and outrageous is initially for the trial court. *Richardson v. East River Elec. Power Co-op.*, 531 N.W.2d 23 (S.D.1995).

[¶ 9.] Hayes asserts that the circumstances surrounding his termination from BHMC give rise to intentional infliction of emotional distress. At trial, Hayes' testimony on this claim centered around alleged mistreatments, including being required to be on emergency call seven days a week for a period of time, mistreatment of his patients, and mail maliciously being stamped "Return to Sender" by the defendants.

[¶ 10.] In *Hayes I*, the trial court had dismissed this claim on a motion for summary judgment. We found issues of material fact that made summary judgment under SDCL 15-6-56 inappropriate and therefore remanded it back to the trial court. *Hayes I*, 1999 SD 28 at ¶ 44, 590 N.W.2d at 252. Hayes believes that a directed verdict on this claim was improper because there were disputed facts and the claim was remanded for jury trial. Even though similar, the legal standards for summary judgment and a directed verdict are sufficiently distinct so as to support different ruling. *Kim v. Coppin State College*, 662 F.2d 1055 (1981). A preclusion of summary judgment does not necessarily prevent a directed verdict once the evidence has been fully developed. Further, what is considered to be the facts at the summary judgment stage may not turn out to be the actual facts if the claim goes to trial. *Cottrell v. Caldwell*, 85 F.3d 1480 (1996). We review the trial court ruling on a motion for a directed verdict under the following standard:

A motion for a directed verdict under SDCL 15-6-50(a) questions the legal sufficiency of the evidence to sustain a

verdict against the moving party. Upon such a motion, the trial court must determine whether there is any substantial evidence to sustain the action. The evidence must be accepted which is most favorable to the nonmoving party and the trial court must indulge all legitimate inferences therefrom in his favor. If sufficient evidence exists so that reasonable minds could differ, a directed verdict is not appropriate. The trial court's decisions and rulings on such motions are presumed correct and this Court will not seek reasons to reverse.

*In re Estate of Holan,* 2001 SD 6, ¶ 9, 621 N.W.2d 588, 590–91.

[¶ 11.] After reviewing the evidence, we find that reasonable minds could not differ on this issue. Hayes contends that the defendants mistreated his patients and that this mistreatment caused him emotional distress. The mistreatment was never directed at Hayes himself and the alleged mistreatment of patients was not done in Hayes' presence. A plaintiff may not recover under an intentional infliction of emotional distress cause of action when the alleged conduct is directed at a third person, and the plaintiff was not present when the conduct occurred. *Bradshaw v. Nicolay,* 765 P.2d 630 (Colo.App.1988); *Reid v. Pierce County,* 136 Wash.2d 195, 961 P.2d 333 (1998); Restatement (Second) of Torts § 46, cmt l.

[¶ 12.] Hayes also alleges that the manner in which his mail was handled by the defendants after his departure, the unfair emergency room policies intended to harass and intimidate him, and the discriminatory treatment of his patients constituted examples of extreme and outrageous conduct. Suffice it to say that upon a fair reading of the record, we agree with the conclusion of the trial court that at the close of the plaintiff's case, there was no substantial evidence to sustain the action. We affirm on this issue.

### ISSUE TWO

[¶ 13.] **Whether the trial court properly excluded evidence of the death of Rachel Kruse.**

[¶ 14.] Hayes contends that evidence of the death of Rachel Kruse should have been admitted because it was relevant to claims for tortious interference, emotional distress, and punitive damages. Kruse was a patient of Hayes. He claims she died because the defendants allegedly refused Kruse family requests to contact Hayes concerning her treatment.

[¶ 15.] Evidentiary rulings are reviewed under an abuse of discretion standard, and the party claiming error must show prejudice from the record. *Shamburger v. Behrens,* 380 N.W.2d 659 (S.D.1986). This Court has held it is proper to exclude evidence that would open up mini trials, with the result that the trial would be extended considerably. *Small v. McKennan Hosp.,* 437 N.W.2d 194 (S.D. 1989). Here it appears that the issue of Kruse's death was settled out of court in an unrelated malpractice action. The defendants denied any wrongdoing. Allowing the evidence of a death, the cause of which is contested, would have opened the door to evidence of a collateral matter. The probative value of such evidence would have been marginal at best. The trial court properly excluded such evidence.

### ISSUE THREE

[¶ 16.] **Whether the trial court properly excluded Dr. Maningas as an expert witness.**

[¶ 17.] Dr. Maningas was retained as an expert witness in a medical malpractice case brought by the estate of

Rachel Kruse against NHGH, BHMC and others. The settlement agreement in the Kruse case provided that the Kruse family would withdraw its work product and ask Maningas to not testify in the Hayes case. Hayes argues that a party who hires an expert witness has no property rights in the expert or his opinions, and that an expert witness cannot be kept from testifying by the party who originally hired the expert. We need not address this argument for two reasons. First, Dr. Maningas would presumably have testified that Rachel Kruse died in some measure because the BHMC and NHGH refused to contact Hayes to learn about her prior course of treatment. This testimony would have been in direct contravention of the trial court's order that evidence of the death of Rachel Kruse would be inadmissible. Secondly, Hayes represented at trial that Dr. Maningas was to testify as an expert on emergency room procedures. The trial court ruled that such testimony would be cumulative, and we agree. Michael Myers, the chair of the University of South Dakota Department of Health Services Administration and a professor at the School of Law, testified about emergency room procedure, operations, and medical conduct. Cumulative evidence is evidence of the same character as evidence previously produced and which supports the same point. *Stormo v. Strong*, 469 N.W.2d 816 (S.D.1991). The trial court has broad discretion concerning the admission of expert testimony and will not be reversed absent a clear showing of an abuse of discretion. *Schaffer v. Edward D. Jones & Co.*, 1996 SD 94, 552 N.W.2d 801. Also, rulings on the admission of cumulative evidence are ordinarily within the sound discretion of the trial court, and its rulings thereon will not be disturbed unless it clearly appears that such discretion has been abused. *Kramer v. Sioux Transit,*

*Inc.*, 85 S.D. 232, 180 N.W.2d 468 (1970). We find no abuse of discretion.

## ISSUE FOUR

[¶ 18.] **Whether the trial court properly admitted evidence of Hayes' net worth.**

[¶ 19.] The trial court allowed evidence of Hayes' net worth, which he contends prejudiced the jury. He also argues that his net worth has no relevance to any issue in the case.

[¶ 20.] Throughout the proceedings, Hayes made numerous references to his financial status. Hayes argued that he "suffered great financial stress as a result of defendants' actions.... The stress, nervousness and anxiety with regard to the financial hit was dramatic, indeed." Further, in reference to the emergency room call policy, Hayes said that he could not afford to hire extra call coverage. These instances alone justify the trial court's ruling that Hayes' net worth be allowed into evidence to rebut his claims of financial distress. A trial court's evidentiary rulings are presumed correct and will not be reversed unless it is not justified by, and is clearly against reason and evidence. When relevant, the fact that a party's financial status was introduced is not enough to warrant a finding of abuse of discretion. *Jurgensen v. Smith*, 2000 SD 73, 611 N.W.2d 439.

## ISSUE FIVE

[¶ 21.] **Whether the trial court erred in making certain comments to and in instructing the jury on Hayes' termination.**

[¶ 22.] Hayes claims that Drs. McLaughlin, Graff, Groeger, and Trinidad breached their fiduciary duties as shareholders and officers of BMHC and the related partnerships and closely held cor-

poration. He asserts that the physician defendants engaged in certain improper conduct designed to squeeze him out as a shareholder, partner, and employee. The defendants counter that the corporate by-laws and partnership agreements provide that any employee or partner can be terminated without cause and that those provisions limit any fiduciary duty owed to Hayes. Their argument is that Hayes' termination was by definition proper in all respects and cannot in and of itself constitute evidence of a breach of fiduciary duty.

[¶ 23.] In *Hayes I*, we held that the majority shareholders and partners did owe a fiduciary duty to Hayes, and that there were material questions of fact as to whether that duty had been breached. We listed as examples a secret meeting conducted by the defendants to devise a method of ridding themselves of Hayes and evidence that they interfered with Hayes' attempt to relocate his practice. We then addressed Hayes' claim of wrongful termination and stated, "As Hayes' termination was completed according to the contract provisions and he could be terminated without cause, we find this argument to be without merit." *Hayes I*, 1999 SD 28 at ¶ 64, 590 N.W.2d at 254.

[¶ 24.] Hayes asserts that on remand the trial court misconstrued our ruling and made comments to the jury and gave four different jury instructions advising the jury that because Hayes' termination was in accordance with the contract provisions, the termination was proper, proper in all respects, or words of similar import. For instance, Instruction No. 15 read:

> You are instructed the plaintiff's termination on July 2, 1992, as a shareholder and partner of Black Hills Medical Center, Northern Hills Medical Associates,

Canis Lupis, [sic] and Northern Hills Medical Associates, Inc. was completed according to the provisions of the contracts which plaintiff signed with his fellow shareholders and partners and was proper in all respects. Accordingly, you are instructed that defendants as the individual doctor defendants had the right by contract to terminate plaintiff's employment and status as a shareholder or partner.

The net effect of the comments and instructions of the trial judge was to advise the jury that it could not consider Hayes' termination, in and of itself, as evidence of a breach of fiduciary duty.

[¶ 25.] Hayes' argument on this issue is that the fiduciary duty owed by the physician defendants cannot be waived or limited by contractual agreement, and that if a termination is motivated by ill will or self dealing, it cannot be proper in all respects. He argues that his termination under the breach of fiduciary duty claim was not in fact proper and that the jury should not have been advised otherwise. By way of notice of review, the defendants invite us to address the question of whether the scope of the fiduciary duty owed by partners and shareholders to one another may be limited by contractual agreement.

[¶ 26.] The question of whether the scope of the fiduciary duty owed by majority partners, officers, and shareholders to a minority partner, employee, or shareholder can be limited by contract has not been addressed in South Dakota. There is a tension between the requirement that shareholders, officers, and partners exercise the utmost good faith and integrity in their dealings with one another [1], and the

---

1. See *Glanzer v. St. Joseph Indian School*, 438 N.W.2d 204 (S.D.1989); *Pear v. Grand Forks Motel Associates*, 553 N.W.2d 774 (N.D.1996).

right of the parties to bargain the scope of their relationships by contract.[2]

[¶ 27.] A fiduciary duty is created by law to protect a minority shareholder, partner, or employee from the oppression of his or her interests by the majority, especially when the majority attempts to freeze out the minority by termination or by self dealing, such as payments to the majority of exorbitant salaries, bonuses, and the like. Courts have generally held that where there is a contractual agreement limiting the scope of the fiduciary duty, and where self dealing is evident, such agreements are invalid and that there must be a legitimate business purpose for any majority action. *Wartski v. Bedford,* 926 F.2d 11 (1st Cir.1991); *Crosby v. Beam,* 47 Ohio St.3d 105, 548 N.E.2d 217 (1989); *Labovitz v. Dolan,* 189 Ill.App.3d 403, 136 Ill.Dec. 780, 545 N.E.2d 304 (1989); *Appletree Square I v. Investmark, Inc.,* 494 N.W.2d 889 (Minn 1993).

[¶ 28.] Some courts have held such contractual agreements valid in the limited context of alleged wrongful termination of a minority shareholder, partner, or employee, where the contract provides for termination without cause, there is a fair buyout provision for purchase of the minority interest, the issue involves the termination itself as opposed to self dealing conduct of the majority, and the litigants were original parties to the contractual agreement. *Donahue v. Rodd Electrotype Co. of New England, Inc.,* 367 Mass. 578, 328 N.E.2d 505 (1975); *Evangelista v. Holland,* 27 Mass.App.Ct. 244, 537 N.E.2d 589 (1989); *Jenkins v. Haworth,* 572 F.Supp. 591 (1983); *Blank v. Chelmsford Ob/Gyn, P.C.,* 420 Mass. 404, 649 N.E.2d 1102 (1995).

[¶ 29.] We decline to address the question of whether, and, if so, to what extent, the scope of a fiduciary duty can be limited by a contractual provision, because we conclude that the doctrine of the law of the case should control here. Under that doctrine, the decision of a question on a former appeal is the law of the case on a subsequent appeal in the same case. *Dwyer v. Christensen,* 77 S.D. 381, 92 N.W.2d 199 (1958); *First W. Bank, Sturgis v. Livestock Yards,* 466 N.W.2d 853 (S.D.1991); *In re Estate of Jetter,* 590 N.W.2d 254 (S.D.1999). That doctrine is binding on the trial court. *Larsen v. Johnson,* 47 S.D. 202, 197 N.W. 230 (1924).

[¶ 30.] We held in *Hayes I* that Hayes' termination was completed according to the contract provisions, and that Hayes could be terminated without cause. *Hayes I,* 1999 SD 28 at ¶ 64, 590 N.W.2d at 254. This was a ruling of law in the first appeal and we will not address the same question in this appeal. The trial court was thus bound to advise the jury that it could not consider Hayes' termination per se as evidence of wrongful conduct. The jury was properly instructed on the elements of the breach of fiduciary duty claim, and Hayes argued forcefully concerning all of the alleged wrongful conduct of the defendants leading to his termination. We note that the jury did find a breach of fiduciary duty and awarded both compensatory and punitive damages. The trial court did not err on this issue.

[¶ 31.] We have considered the other assertions of error raised by Hayes and find them to be without merit.

[¶ 32.] The judgment is affirmed.

[¶ 33.] MILLER, Chief Justice, and GILBERTSON, Justice, concur.

2. *See Coleman v. Taub,* 638 F.2d 628 (3rd Cir.1981); *Jenkins v. Haworth,* 572 F.Supp. 591 (1983); *Wartski v. Bedford,* 926 F.2d 11 (1st Cir.1991).

[¶ 34.] SABERS, Justice, and KONENKAMP, Justice, concur in part and dissent in part.

[¶ 35.] STEELE, Circuit Judge, for AMUNDSON, Justice, disqualified.

SABERS, Justice (concurring in part & dissenting in part).

[¶ 36.] I concur with the majority opinion in every respect except for its treatment of issue 1. In determining if the directed verdict for the intentional infliction of emotional distress claim was appropriately granted, the majority opinion fails to utilize the proper standard of review and therefore, almost automatically, reaches the wrong result.

[¶ 37.] In *Hayes I,* we remanded summary judgment on this identical issue. In doing so, we stated:

Viewing the evidence in the light most favorable to Hayes, placing him on emergency call 24 hours a day seven days a week, mistreating his patients, manipulation of his mail, tampering with his patient charts and singling him out for review before the Clinical Monitoring Committee could be considered extreme or outrageous. We find Hayes did present sufficient evidence so reasonable minds could differ. Therefore, as to this issue, this is ultimately a factual question for the jury.

I agree with the majority opinion that overcoming a summary judgment is not identical to meeting a motion for a directed verdict. Yet, they are more similar than the majority opinion acknowledges. The majority opinion states that the trial court did not err in finding that reasonable minds could not have differed as to the evidence offered at the directed verdict stage. However, both the trial court and the majority opinion infect their reasoning by failing to appreciate the other aspects of the proper standard of review for a directed verdict. We have recently reiterated that standard:

A motion for a directed verdict under SDCL 15-6-50(a) questions the legal sufficiency of the evidence to sustain a verdict against the moving party. Upon such a motion, the trial court must determine whether there is *any substantial evidence* to sustain the action. The evidence *must be accepted which is most favorable to the nonmoving party* and the trial court *must indulge all legitimate inferences* therefrom in his favor. If sufficient evidence exists so that reasonable minds could differ, a directed verdict is not appropriate.

*Estate of Holan,* 2001 SD 6, ¶ 9, 621 N.W.2d 588, 590.

[¶ 38.] Instead of viewing the facts, as we similarly did in *Hayes I,* "in the light most favorable to Hayes" the majority opinion ignores the requirements that we: 1.) accept the evidence in the light most favorable to the nonmoving party; 2.) indulge all legitimate inferences; and 3.) determine whether substantial evidence exists to sustain the action. Nothing more than lip service is paid to these three requirements in the majority opinion. We should specifically reject the majority opinion's analysis to the extent it defeats the proper standard of review. A view of the evidence in the proper light requires us to find, as we did in *Hayes I,* that "this is ultimately a factual question for the jury."

[¶ 39.] As to the initial question whether the conduct was extreme and outrageous, I would remind the Court that intentional infliction of emotional distress also includes reckless conduct resulting in emotional distress. *Petersen v. Sioux Valley Hospital Ass'n,* 491 N.W.2d 467, 469 (S.D.1992). The facts in *Hayes I,* which we recognized "could be considered extreme or outrageous" to defeat summary

judgment, were supported sufficiently and the question should have gone to a jury and not dealt with by directed verdict. I would also submit that the law of the case doctrine requires us to recognize that these facts, after support was offered for them at trial, "could be considered extreme or outrageous." *See First Western Bank, Sturgis v. Livestock Yards. Co.*, 466 N.W.2d 853, 858 (S.D.1991) (stating that a question decided on a former appeal becomes the law of the case). As the majority opinion recognizes in dealing with a separate issue, "[t]hat doctrine is binding on the trial court."

[¶ 40.] For these reasons, I respectfully dissent.

[¶ 41.] KONENKAMP, Justice, joins this special writing.