2004 SD 61

**In the Matter ESTATE OF Lawrence HOLAN, Deceased.**

**No. 22955.**

Supreme Court of South Dakota.

Considered on Briefs March 22, 2004.

Decided May 5, 2004.

Wally Eklund of Johnson, Eklund, Nicholson & Peterson, Gregory, SD, for appellant Dennis Holan.

Brett M. Koenecke of May, Adam, Gerdes & Thompson, Pierre, SD, for appellees Lynette Leifermann, Judene Holan, Duane Holan, and Dean Holan.

KONENKAMP, Justice.

[¶ 1.] Interest usually begins to accrue on pecuniary devises either at the time set by statute or the time set in the will. The question presented here is whether a delay in the settlement of an estate caused by a will contest and a dispute on valuation will also delay the time interest begins to accrue on such devises. In this case, the circuit court ruled that, despite the delay in settlement, interest accrued from the date of death, as provided in the testator's will. Although there is a split of authority on the question, we adopt the majority view that delay in settlement will not delay accrual of interest because such a rule more closely honors testamentary intent, in that it bases the accrual of interest on an initial point that cannot be moved by fortuities in the probate process, thus allowing testators to provide certainty in their pecuniary bequests. We affirm.

**Background**

[¶ 2.] Lawrence Holan died on April 11, 1998. A widower, Lawrence was survived by six children. His estate consisted of farm equipment, a house in Pukwana, and 1,358.5 acres of farmland. Shortly after his death, Lawrence's daughters, Judene Holan and Lynette Leiferman, offered for probate a will dated March 3, 1997. Dennis Holan contested the admission, arguing that the will was the product of undue influence. He offered instead, Lawrence's will of May 15, 1991 and its codicil.

[¶ 3.] The significant difference between the two wills was the disposition of the farmland. Under the 1997 will, Lawrence devised to Dennis 80 acres in Brule County. The remainder of Lawrence's estate was to be divided in equal shares among the six children. Under the 1991 will, Lawrence left his home in Pukwana to the other five siblings and his farm property to Dennis, provided that he make payments over a fifteen-year period to his siblings equaling their share of the appraised value of the farmland at the time of Lawrence's death.[1]

[¶ 4.] In November 1999, a jury ruled that the 1997 will was made through the undue influence of Lynette and Judene. We affirmed the verdict in *Estate of Holan*, 2001 SD 6, 621 N.W.2d 588. On remand, the 1991 will and its codicil were admitted to probate. On April 11, 2002, the court valued the farmland Dennis received under the will, and it ordered Dennis to pay each of the five devisees 13.3 percent of the value of the farmland. The payments were to be in fifteen annual installments, with interest at the rate of 5.98 percent calculated from the decedent's date of death, April 11, 1998, with the first of the annual payments due and owing as of April 11, 1999.

[¶ 5.] On appeal, Dennis challenges the circuit court's decisions in ordering him to pay interest (1) calculated from the date of death of the decedent, and (2) at the rate permitted by the Internal Revenue Service at the time of Lawrence's death instead of the lower rate later approved by the IRS.[2] Under our

1. Specifically, the 1991 will gave to Dennis

    all of the rural real property of which I may die seize; Provided, however, that such devise shall be charged with the payment by Dennis to each of my other five children an amount equal to Thirteen & Three-tenths percent ... of the appraised value at my death, to be paid in amortized payments over a period of Fifteen ... years at the

    annual interest rate of Nine percent ... or the amount permitted by the Internal Revenue Service to avoid the imputed interest rule, whichever shall be lesser, the first such payment to be due within One ... year of the date of my death.

2. Although Dennis does not assign it as error, he complains that the circuit court's order requires him to pay 15 percent on past due

standard of review, we will not set aside trial court findings of fact unless they are clearly erroneous. *Estate of Dokken,* 2000 SD 9, ¶ 10, 604 N.W.2d 487, 490 (citations omitted). Conclusions of law and rulings on statutory interpretation are reviewed de novo. *Osloond v. Osloond,* 2000 SD 46, ¶¶ 6–7, 609 N.W.2d 118, 121.

### 1. Interest Calculated From the Date of Death

[¶ 6.] Dennis contends that the interest he was required to pay under the will should not have been calculated from the date of death. Because it was not possible to figure the amount on which interest was due until April 11, 2002, the day the circuit court ruled on the proper valuation for the farmland, Dennis insists that it was not possible for him to perform his obligations. For their part, the other siblings argue that from the date of Lawrence's death Dennis had possession of the farmland and he benefited from the use of that property for six crop seasons.

[¶ 7.] The gist of Dennis's position is that from the date of Lawrence's death until April 11, 2002, he was prohibited from making the payments because of the actions of Lynette and Judene acting as personal representatives, and because a value was not placed upon the property before that time. His argument is premised on several sections of the South Dakota Codified Laws, Title 20, dealing with excuse for want of performance because of delay or prevention. These statutes are not pertinent to the issue here. Instead, we look to Title 29A, the Uniform Probate Code.

[¶ 8.] SDCL 29A–3–101 provides:
The power of a person to leave property by will, and the rights of creditors, devisees, and heirs to the person's property are subject to the restrictions and limitations contained in this code to facilitate the prompt settlement of estates. Upon the death of a person, that person's real and personal property devolves to the persons to whom it is devised by will or to those indicated as substitutes for them in cases involving lapse, renunciation, or other circumstances affecting the devolution of testate estate, or in the absence of testamentary disposition, to the heirs, or to those indicated as substitutes for them in cases involving renunciation or other circumstances affecting devolution of intestate estates, subject to homestead allowance, exempt property and family allowance, rights of creditors, elective share of the surviving spouse, and administration.

Under this statute, "real and personal property devolves to the persons to whom it is devised," at the time of the testator's death. Dennis does not argue that SDCL 29A–3–904 applies. That statute provides:
General pecuniary devises bear interest at the category B rate of interest specified in § 54–3–16 beginning one year after the first appointment of a personal representative until payment, unless a contrary intent is indicated by the will.

Here, the will indicated a contrary intent because it provided an alternative interest rate and the first payment with interest

---

sums. The court ruled that inasmuch as it did not set a rate of interest until August 5, 2002, it would be inequitable to declare sums due before that date to be past due. Therefore, the court ruled that "the interest rate of 5.98 percent shall be the rate on all payments due from the date of death through August 5, 2002, including any that have been past due under the annualized payment requirement accruing up to August 5, 2002. Thereafter, the appropriate rate provided under our South Dakota statutes on amounts due and unpaid would apply."

was to begin one year from the date of Lawrence Holan's death. Nor does Dennis argue that he did not receive the property devised to him by the will. He simply believes that it was impossible or impracticable for him to perform his obligation under the will. We must examine this question not simply from Dennis's perspective but also from the perspective of the remaining siblings, who were entitled to their bequests from the date of Lawrence's death.

■■■ [¶ 9.] While there is some conflict in the cases on whether a will contest stays the accrual of interest, the majority view is that it does not. *See Estate of Vaden,* 677 P.2d 659 (Okla.Ct.App. 1983); 97 C.J.S. Wills § 2013 (2001). Courts refusing to deviate from a statutory commencement date for interest reason that the right to receive interest is incident to the legacy itself. *Vaden,* 677 P.2d at 665. Those receiving a money legacy are in a similar position to creditors and are therefore entitled to interest from the time they would have received payment absent the delay from a will contest. This rationale accords with testamentary intention: wills are ordinarily made with the expectation that distribution will not be postponed. When delays occur from a will contest, they may lessen the value of the bequest.

[¶ 10.] Although we concede some force to Dennis's excuse that the lack of a judicially determined valuation on the property and a delay caused by the will contest presented impediments to the performance of his obligations under the will, we think the general rule better comports with testamentary intent. The rule has the advantage of setting a beginning point for interest accrual that cannot be changed by the vagaries of the probate process, and thus it enables testators to give certainty to their bequests without a need to use special provisions. *Woodward's Estate v. Holton,* 78 Vt. 254, 62 A. 718 (1906). We think the general rule should apply even where, as here, some of the devisees opposed the will. Therefore, the siblings were entitled to interest on their pecuniary devises from the date of Lawrence's death.

### 2. Rate of Interest Set as of Date of Death

■■■ [¶ 11.] Dennis next argues that because the will provided for the lowest interest rate permitted by the Internal Revenue Service to avoid the imputed interest rule, the rate should have been 5.48 percent, set by the IRS sometime after Lawrence's death, and not the 5.98 percent rate in existence at the time of Lawrence's death. Given our holding that the trial court was correct in ruling that the date interest began to accrue was the date of Lawrence's death, it seems only logical that the rate of interest due would be set as of that date. Property devised under a will devolves at the time of death and the applicable rate of interest should fix at the same time. We are not persuaded by the argument that the trial court was bound to fix the lowest possible interest rate in existence at any time during the pendency of the estate proceedings.

[¶ 12.] Affirmed.

[¶ 13.] GILBERTSON, Chief Justice, and SABERS, ZINTER, and MEIERHENRY, Justices, concur.