#24741-a-JKK

**2008 SD 91**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF THE
ESTATE OF JOSEPH V.
GINSBACH, Deceased.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE WARREN G. JOHNSON
Judge

* * * *

BRAD P. GORDON of
Tellinghuisen & Gordon, P.C.          Attorneys for appellant
Spearfish, South Dakota               Raymond A. Ginsbach.

DAVID L. CLAGGETT                     Attorney for appellees
Spearfish, South Dakota               Estate of Joseph V. Ginsbach,
                                      Mary Kay Cheshier, Personal
                                      Representative.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 26, 2008

OPINION FILED **10/01/08**

#24741

KONENKAMP, Justice

[¶1.]      Ray Ginsbach and his brother, Joe, were partners in a plumbing business.  According to Ray, they were also partners in J & R Rentals.  After Joe died, Ray continued to operate J & R Rentals, assuming that certain real estate was an asset of the partnership.  When a court declared that the real estate was the property of Joe's estate, Ray filed a claim against the estate seeking reimbursement for services and materials provided by him to benefit the estate.  The personal representative denied his claim and Ray failed to timely file a petition in court to allow the claim.  Because Ray filed his claim beyond the limitations period, the court denied his petition.  We affirm.

## Background

[¶2.]      Joe Ginsbach operated a plumbing business known as Ginsbach Plumbing.  In 1961, he brought his brother, Ray, into the business with him.  No formal partnership agreement was drafted, but Ray testified that he and Joe split the profits equally.  Ray alleged that sometime later he and Joe formed another partnership, J & R Rentals.  This arrangement was similarly not reduced to writing.

[¶3.]      Beginning in 1975, Ray filed partnership tax returns with the IRS for J & R Rentals, signed only by him.  The tax returns listed 316 Quincy, Spearfish, South Dakota, as a partnership rental property.  According to Ray, 316 Quincy was a partnership asset, although it was purchased solely in Joe's name in 1972 and listed specifically in Joe's will as his asset.  After 1986, the tax returns Ray filed also listed property at 816 10th Street, Belle Fourche, South Dakota, as a

-1-

partnership asset. Ray alleges the property at 816 10th Street was purchased jointly in 1986, and sold in 2004, with the sale proceeds split equally. For the years both properties were listed as partnership assets, J & R Rentals paid the real estate taxes, insurance, and costs of certain improvements. The partnership also deducted the expenses and claimed depreciation on the buildings and improvements.

[¶4.]     Ray maintains that in 1986 he purchased Joe's interest in Ginsbach Plumbing, and Joe retired. There was no evidence documenting this buy out. It was not disputed, however, that Ray continued to operate Ginsbach Plumbing from an apartment at 316 Quincy. Joe's son claimed that in 2001, Ray's attorney sent Joe a series of letters demanding that Joe convey title of 316 Quincy to J & R Rentals or to Joe and Ray as co-tenants. Although Ray threatened suit, he did not follow through. In 2004, Joe informed all concerned that he leased 316 Quincy to his son, George Ginsbach, and to Glen and Mary Kay Cheshier.

[¶5.]     Joe died on January 15, 2005. He was survived by his son George and daughters, Mary Kay Cheshier and Patty Jo Ragans. Joe's wife, Mary, had predeceased him in 1998. On March 24, 2006, Ray filed an application in court to be appointed the personal representative of Joe's estate and for informal probate. The court granted his application. Joe's will, however, declared that Mary Kay was to be the personal representative. In April 2006, Mary Kay filed her petition in court for informal probate, determination of heirs, and appointment of personal representative. After a hearing, the court removed Ray as personal representative and appointed Mary Kay.

[¶6.]     After Mary Kay was appointed personal representative on May 25, 2006, she published notice to all creditors for the filing of claims against Joe's estate. The notice informed creditors that claims must be filed within four months of the date she was appointed as the personal representative or within sixty days, whichever was longer. Ray filed a claim against the estate. The record does not contain Ray's claim or a copy of it. There is no evidence concerning the date of the claim or its substance. There is, however, a letter from Mary Kay on September 5, 2006, providing Ray notice that the personal representative disallowed his claim. The letter also informed Ray that he had sixty days to commence legal proceedings against the personal representative for his claim, or it would be barred. Ray did not file a petition in court for allowance of his claim.

[¶7.]     Previous to this, on November 8, 2005, George Ginsbach, Joe's son, had brought a civil suit against Ray in circuit court for "turnover of funds, vacation of property and, if necessary, to dissolve and wind up a partnership." According to George, 316 Quincy was solely Joe's property, deeded only in his name, and was property that passed to Joe's children after Joe's death. George disputed Ray's claim to a partnership interest in the property. Ray filed an answer and submitted a counterclaim asking the court to declare that 316 Quincy was in fact a partnership asset.

[¶8.]     After a hearing, the court issued findings of fact and conclusions of law and a judgment on February 22, 2007. It recounted the history of Joe and Ray's business relationship and the lack of documentation evidencing their purported partnerships. The court noted that Ray knew 316 Quincy was titled solely in Joe's

name and that he never brought suit to resolve the dispute. The fact that 316 Quincy was solely in Joe's name, according to the court, was evidence that it was Joe's property and not a donated partnership asset. The court further noted that Ray did not present evidence that he contributed to the purchase of the property, and therefore, failed to rebut the presumption that it was *not* a partnership asset. On this evidence, the court concluded that the property and improvements at 316 Quincy were the sole property of the estate.

[¶9.]        On June 22, 2007, Ray filed another claim against the estate in probate proceedings. He sought payment of $115,099.90 for services and materials he provided to the estate that benefitted 316 Quincy. He claimed reimbursement for yard work, maintenance, improvements, and other miscellaneous tasks. On June 27, 2007, Mary Kay served Ray with a notice of disallowance of the claim. On July 11, 2007, Ray filed a petition with the court for allowance of his claim. A hearing was held and the court denied his petition. The court held that Ray failed to file his petition within the time allowed after the notice to creditors was published as required by statute. The court also rejected Ray's claim that he was a creditor entitled to written notice under SDCL 29A-3-801(b) because Ray previously filed a similar claim that was rejected and at all times had been involved in the estate proceedings.

[¶10.]        Ray appeals asserting that his claim did not *arise* until after Joe's death, and therefore, his claim is not barred by statute. He also contends that to avoid injustice the facts and circumstances warrant an extension of the time limit under SDCL 29A-3-804(c). We review the circuit court's conclusions of law and

rulings on statutory interpretation de novo. *In re* Estate of Holan, 2004 SD 61, ¶5, 680 NW2d 331, 333 (citing Osloond v. Osloond, 2000 SD 46, ¶¶6-7, 609 NW2d 118, 121).

**Analysis and Decision**

[¶11.]     Ray contends that he could not file his claim against the estate until resolution of his civil suit on whether 316 Quincy was a partnership asset. According to Ray, until he knew 316 Quincy was not a partnership asset, he had no claim against the estate for reimbursement on the services he performed benefiting what he thought was his property. Therefore, he believes the limitation period in SDCL 29A-3-803(a) does not apply to bar his claim against the estate.

[¶12.]     South Dakota's statute dealing with a claim against an estate requires that unless a creditor's claim is filed "within the time set in the published notice to creditors"

> [a]ll claims against a decedent's estate which arose before the death of the decedent, including claims of the state and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, if not barred earlier by another statute of limitations or nonclaim statute, are barred against the estate, the personal representative, and the heirs and devisees of the decedent. . . .

SDCL 29A-3-803(a)(1). The published notice in this case provided that "[c]reditors of decedent must file their claims with-in [sic] four months after the date of the first publication of this notice or their claims may be barred." The notice was first published on October 4, 2006, and last published on October 25, 2006.

[¶13.]     Nonclaim statutes are applied strictly. *See* Hurlimann v. Bank of American Nat'l Trust and Sav. Ass'n, 297 P2d 682, 685-86 (CalCtApp 1956); Nelson

v. Nelson, 162 P3d 43, 51 (KanCtApp 2007); *In re* Estate of Powers v. Powers, 552 NW2d 785, 786-87 (ND 1996); Priestman v. Elder, 646 NE2d 234, 237 (OhioCtApp 1994); Lewis v. Knight, 144 NE2d 551, 554-55 (OhioCtApp 1955). As one court remarked,

> Public policy requires that estates of decedents be speedily and finally determined. It is pursuant to this policy that statutes of non-claim have been enacted by the legislature. It is not the purpose of the [statutes] to unreasonably restrict the rights of creditors, but the object of the [statute] is to expedite and facilitate the settlement of estates in the interest of the public welfare and for the benefits of those interested in decedent's estates.

Gates Learjet Corp. v. Moyer, 459 So2d 1082, 1084 n1 (FlaCtApp 1984) (quoting *In re* Browns Estate, 117 So2d 478, 480 (Fla 1960)). Courts cannot broaden the opportunity for creditors to make claims against an estate beyond that allowed by statute. *See id.* The statute requires that *all* claims "whether due or to become due, absolute or contingent, liquidated or unliquidated, founded in contract, tort or other legal basis" must be brought within the limitation period. SDCL 29A-3-803(a). Creditors bear the burden to take action to protect their interests within the time limitation.

[¶14.] Although Ray insists his claim did not arise until after the civil suit was decided, he was aware while Joe was alive that 316 Quincy was solely in Joe's name, Joe had no intention to transfer partial ownership to Ray, and Joe leased the property to George Ginsbach and Glen and Mary Kay Cheshier. Ray could have brought a claim against Joe during Joe's lifetime for the services and materials he provided to manage and improve the property. Ray's claim was not dependent on resolution of the civil suit brought by George against Ray *after* Joe died. We

conclude that Ray's claim is the type of claim contemplated in SDCL 29A-3-803(a). There is no dispute that it was not presented within the time limitation, and therefore, the court did not err when it barred Ray's claim. *See In re* Estate of Bachand, 307 NW2d 140, 142 (SD 1981) (if a claim is not timely presented, it is barred).

[¶15.] Ray next asserts that to avoid injustice he should be granted an extension under SDCL 29A-3-804(c) to file a late petition for allowance of his claim against the estate. SDCL 29A-3-804(c) only applies when a creditor has *not* yet filed a petition for allowance of a claim after the personal representative has issued a notice of disallowance. After the personal representative denied Ray's *second* claim, Ray filed a petition for allowance within sixty days. Thus, the statute is inapplicable.

[¶16.] On the other hand, Ray did not file a petition for allowance in court for his *first* claim against the estate. Whether Ray is asking this Court to determine if an extension should be granted on his *first claim* is not clear from his argument. In his appellate brief, he states that the estate acknowledged that the second claim was founded on the same information as the first, and that "[t]he record reflects that [his] prior claim against the estate, which it denied, was similar in nature to the present claim[.]" Then he asserts that the circumstances of this case, with the ancillary civil case, are unusual and that he has not been dilatory in his actions. With these contentions, Ray requests an "extension of time to file his petition for allowance of his claim against the estate of Joseph V. Ginsbach."

[¶17.] Regardless of which claim Ray is seeking to file late, he never petitioned the court for an extension of the statutory time. The first time Ray requested an extension was in his appellate brief. The statute is clear: "to avoid injustice the court, *on petition*, may order an extension of the sixty-day period[.]" SDCL 29A-3-804(c) (emphasis added). Ray's failure to petition the court for an extension leaves us with no decision to review. Without a decision to review, we cannot say the court erred. *See* Primeaux v. Dooley, 2008 SD 22, ¶17, 747 NW2d 137, 142 (quoting State v. Sickler, 334 NW2d 677, 679 (SD 1983) (citing American Fed. Sav. & Loan Ass'n v. Kass, 320 NW2d 800, 803 (SD 1982)) (citing State v. Nelson, 1998 SD 124, ¶7, 587 NW2d 439, 443 (citations omitted) ("Issues not advanced at trial cannot ordinarily be raised for the first time on appeal.")).

[¶18.] Mary Kay Cheshier moved for appellate attorney's fees as the personal representative of the estate. She relies on SDCL 15-17-38 and SDCL 29A-3-720, asserting that "[i]n the present case, the attorney's services are beneficial to the estate and necessary due to Appellant's claim and appeal[.]" Under SDCL 29A-3-720, a court may award reasonable attorney's fees to "[a]ny personal representative . . . who defends or prosecutes any proceeding in good faith, whether successful or not." We grant Mary Kay's request in the amount of $2,607 in attorney's fees.

[¶19.] Affirmed.

[¶20.] GILBERTSON, Chief Justice, and SABERS, ZINTER, and MEIERHENRY, Justices, concur.